HEINRICH MOTORS, INC., Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

No. 8, Docket 32070.

United States Court of Appeals
Second Circuit.

Argued Sept. 6, 1968.

Decided Nov. 4, 1968.

Truman G. Searle, Rochester, N. Y. (Nixon, Hargrave, Devans & Doyle, Rochester, N. Y., and Gerald L. Paley, Rochester, N. Y., on the brief), for petitioner.

Gary Green, Washington, D. C. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel and Richard N. Chapman, N.L.R.B., on the brief), for respondent.

Before LUMBARD, Chief Judge, and SMITH and ANDERSON, Circuit Judges.

LUMBARD, Chief Judge:

Heinrich Motors, Inc. petitions for review of a supplemental back pay order of the National Labor Relations Board directing it to pay $4129.52 to Anthony Cira, an employee who the Board found had been discriminatorily discharged in violation of section 8(a) (3) of the National Labor Relations Act, as amended, 29 U.S.C. § 158(a) (3). The Board cross-petitions for enforcement of its order.

The central issue in this case is whether the Board was correct in determining, contrary to the conclusions of the trial examiner, that Cira's post-discharge activities did not amount to a "wilful loss of earnings" such as would be a defense to the Company in the back pay proceeding. We agree that the Company did not sustain its burden of showing a wilful loss and accordingly we grant the Board's cross-petition for enforcement.

On July 23, 1965, the NLRB issued a decision and order, 153 N.L.R.B. 1575, declaring that Heinrich Motors, Inc. had discriminatorily discharged nine employees. The order required, inter alia, that the respondent reinstate the discriminatees with back pay. The Company did not seek review of the Board's decision. It thereafter offered reinstatement to all nine employees and paid agreed upon amounts of back pay to eight of them. The Company and the Board's regional director for the Second Region could not agree, however, as to whether any back pay was due the ninth employee, Anthony Cira, and on February 21, 1966 a back pay specification was issued, commencing these supplemental proceedings.

At the back pay hearing Cira testified that for several years prior to his employment with the Company he had conducted a used car sales business. After he was hired by the Company, in February, 1964, to work as a mechanic in the night shift, he continued to operate his used car business on a part time basis. After his discharge on April 18, 1964, Cira continued the used car business on a full time basis, allegedly expanding it by adding a general auto repair service. This expansion included posting a sign on the premises and soliciting repair work among local factory workers. In September, 1964, he learned that he would have to vacate the lot on which the business was located because it had been sold. He then made arrangements to take over the management of a gasoline service station, terminated his business on October 15, and commenced operating the gasoline station. On September 11, 1965, the company offered him reinstatement; he declined and continued to operate the service station.

Cira also testified that shortly after his discharge he registered with the New York State Employment Service. Two weeks later he received a message that the employment service had called him; but he failed to return the call. The record does not disclose the purpose of the call.

At the hearing Cira's financial statements covering the back pay period were introduced. These statements show that Cira made no profit from the used car business, and that he made some profit at the service station but less than he would have made at the Company except for the third quarter of 1965.

During the hearing, the Company sought to secure the testimony of Hyman Dishner, the compliance officer in the Board's Regional Office. According to the Company, Dishner would have testified that Cira told him, prior to September 11, 1965, that he did not desire reinstatement with the Company. The trial examiner, however, quashed a subpoena served upon Dishner and would not permit him to testify.

After the hearing, the trial examiner concluded that Cira had wilfully contributed to his loss of earnings during the back pay period by not seeking equivalent employment with due diligence and had withdrawn himself from the labor market by committing himself to the management of the service station. She therefore recommended that back pay be denied. She also stated that she had erred in quashing the Dishner subpoena, finding that the Company should have

been allowed to question Mr. Dishner concerning any statements Cira might have made regarding his desire not to be reinstated. In view of her finding that Cira was chargeable with a wilful loss of earnings, however, the issue had become moot and hence she concluded that it was not necessary to reopen the hearing.

On review, the Board rejected the trial examiner's findings and recommendations, concluding that the Company had failed to sustain its burden of showing that Cira wilfully incurred a loss of earnings. Accordingly, the Board ordered back pay for the entire back pay period. The Board also concluded that the Dishner subpoena had been properly quashed and that any statements Cira might have made concerning his reinstatement were irrelevant to the issue of how much back pay was due.

■ Under § 10(c) of the National Labor Relations Act, as amended, the Board is empowered "to take such affirmative action [against one who has committed an unfair labor practice] including reinstatement of employees with or without back pay, as will effectuate the policies" of the Act. The general rule in back pay cases is that a wrongfully discharged employee is entitled to the difference between what he would have earned but for the wrongful discharge and his actual interim earnings from the time of discharge until he is offered reinstatement. Back pay can be reduced, however, if a "wilful loss of earnings," such as a failure diligently to seek other employment, is shown. N.L.R.B. v. Cashman Auto Co., 223 F.2d 832, 835 (1st Cir. 1955) ; N.L.R.B. v. Mastro Plastics Corp., 354 F.2d 170 (2d Cir. 1965), cert. den., 384 U.S. 972, 86 S.Ct. 1862, 16 L.Ed.2d 682; Phelps Dodge Corp. v. N.L.R.B., 313 U.S. 177, 197–200, 61 S.Ct. 845, 85 L.Ed. 1271 (1941).

■ It is indisputable that self-employment is an adequate and proper way for the injured employee to attempt to mitigate his loss of wages. Cashman Auto Co., 109 N.L.R.B. 720, 722 (1954), enf'd, 223 F.2d 832 (1st Cir. 1955);

Arduini Mfg. Corp., 162 N.L.R.B. No. 90 (1967). Self-employment should be treated like any other interim employment in measuring back pay liability. N.L.R.B. v. Mastro Plastics Corp., supra, 354 F.2d at 179; Brown & Root, Inc., 132 N.L.R.B. 486, 500 (1961), enf'd, 311 F.2d 447 (8th Cir. 1963). Although the General Counsel has the burden of going forward with evidence that the employee has not wilfully incurred a loss of earnings, the ultimate burden of proving a wilful loss is on the employer. N.L.R.B. v. Mastro Plastics Corp., supra. Cira's testimony at the hearing, which was largely uncontested, established that he turned to self-employment in order to mitigate his damages. Petitioner nevertheless urges us to adopt the trial examiner's conclusion that Cira's efforts did not constitute due diligence. That conclusion, however, was based largely upon an erroneous application of the law. There was no basis, for example, for the trial examiner's suggestion that Cira should have introduced corroborative evidence to support his testimony that he spent full time at his used car lot, since the company had the burden of proving the unreasonableness of his efforts and the General Counsel had only the burden of going forward with evidence.

■ Likewise, that Cira may have spent less than full time at the used car business while searching for another source of business in September and October of 1964, after he had been informed that his lot had been sold, does not negate his having engaged in full-time self-employment. The time spent by an entrepreneur in seeking business opportunities is in these circumstances necessarily a part of his self-employment. Cf. Cornell v. T. V. Development Corp., 17 N.Y.2d 69, 268 N.Y.S.2d 29, 215 N.E. 2d 349 (1966). It would be unfair to Cira to view this time as adversely reflecting upon his diligence in minimizing the Company's back pay obligation.

■■ Nor does Cira's failure to operate his used car business at a profit, or to increase its revenues after his discharge, support a finding that he did

not devote his full time to the business. As was stated in N.L.R.B. v. Cashman Auto Co., supra, 223 F.2d at 836, "The principle of mitigation of damages does not require success; it only requires an honest good faith effort." We agree with the Board that Cira's failure to make a profit at his used car business is not grounds for disregarding his sworn and uncontradicted testimony that he devoted full time to the operation of that business after his discharge, or for finding that he did not act with reasonable diligence to minimize his wage loss.

■■ The trial examiner apparently placed considerable weight upon Cira's failure to return the telephone call from the state employment service. The Board has held, however, that a person is not required to look for other employment while he is reasonably engaged in self-employment. See East Texas Steel Castings Co., 116 N.L.R.B. 1336, 1344–45 (1956), enf'd, 255 F.2d 284 (5th Cir. 1958). Furthermore, it was not shown that the call was in connection with a job offer, that the job, if any, was substantially equivalent to his job with the Company or more promising than his used car business. Cf. Arduini Mfg. Corp., 162 N.L.R.B. No. 90 (1967). In these circumstances, the Board was justified in not considering this "remote and speculative" evidence of lack of good faith effort. Phelps Dodge Corp. v. N.L.R.B., 313 U.S. 177, 199, 61 S.Ct. 845, 85 L.Ed. 1271 (1941).

■ Finally, the trial examiner's inference that Cira's full time operation of the gasoline station demonstrated a withdrawal from the labor market is inconsistent with the settled view, discussed above, that full time self-employment represents no more of a removal from the labor market than any other employment. Cira's management of the service station, while it indicates his diligence in seeking to mitigate his loss, did not extinguish the Company's duty to offer reinstatement, which it did not fulfill until almost a year after he began to operate the station. Cira might well have gone back to work for the Company had an offer been made before the last quarter of 1965, when his gas station earnings for the first time reached the level of his Company pay. The Board therefore properly found that the Company had not established a withdrawal from the labor market. To hold otherwise would be to deny any recovery to the employee who successfully cuts his losses by finding other employment, while granting it to those who are less successful.

■ An evaluation of the entire record indicates an honest and diligent effort by the employee, Cira, to mitigate his losses by turning to self-employment as a mechanic. He first put out a sign at his used car lot stating that he was in the car repair business. When he learned that he would have to terminate this business he spent part of his time negotiating for the management of a gasoline station and thereafter worked full time managing that station. We conclude that the Board was clearly justified in finding, contrary to the trial examiner, that the Company failed to sustain its burden of showing a willful loss of earnings. See N.L.R.B. v. St. John's Associates, Inc., 392 F.2d 182 (2d Cir. 1968); Oil, Chemical & Atomic Workers, etc. v. N.L.R.B., 124 U.S.App. D.C. 113, 362 F.2d 943, 945–946 (1966); N.L.R.B. v. A.P.W. Products Co., 316 F.2d 899 (2d Cir. 1963); N.L.R.B. v. Interboro Contractors, Inc., 388 F.2d 495 (2d Cir. 1967).

■ We also find that the Board's action in disregarding any testimony Dishner might have given regarding Cira's statement that he did not desire to be reinstated was proper. Such statements obviously teach nothing about the adequacy of post-discharge efforts to obtain gainful employment. The Board was therefore correct in concluding that the proffered testimony was irrelevant to the issue of a willful loss of earnings.

■ The testimony was clearly relevant and admissible on the issue of

whether or not Cira had willfully removed himself from the labor market and thereby waived reinstatement. The law recognizes no general privilege for communications between a discharged employee and a Board compliance officer and the Board has no power to create such a privilege. N.L.R.B. v. Capitol Fish Co., 294 F.2d 868 (5th Cir. 1961) and General Engineering, Inc. v. N.L.R.B., 341 F.2d 367 (9th Cir. 1965). The Board should therefore have held that the subpoena for Dishner had been improperly quashed by the trial examiner.

However, we do not think that a remand is called for. The Board had before it all that the respondent company claimed Dishner would have said, and it specifically held that it was entitled to little or no weight. Viewing the record as a whole we are satisfied that the Board was not clearly in error in so doing. Statements such as Cira's remarks to Dishner are of little value in determining whether there has been a withdrawal from the labor market or a waiver of reinstatement when they are made before the Company has offered reinstatement. As the Board pointed out in its decision, such statements:

> "may reflect only a momentary state of mind that is subject to change; prior to an offer of reinstatement, such statements are in the nature of answers to a hypothetical question; and the discriminatee's expression may have been made in the heat of dissatisfaction with his treatment by [the employer]."

Moreover, there is no indication that the Company knew that Cira did not desire reinstatement or that it relied upon the alleged statement in delaying its reinstatement offer. The reinstatement requirement has the dual purpose of protecting the discharged employee and demonstrating the Company's good faith to its other employees. Local 833 U.A.W., etc. (Kohler Co.) v. N.L.R.B., 112 U.S.App.D.C. 107, 300 F.2d 699, 703 (1962). Under these circumstances, the Board did not err in finding that Cira's remarks to Dishner could not be the basis for excusing the Company from its duty to offer reinstatement.

The Company's petition for review is therefore denied and the Board's cross-petition for enforcement granted.