IRON WORKERS LOCAL 118, INTER-
NATIONAL ASSOCIATION OF
BRIDGE AND STRUCTURAL IRON
WORKERS, AFL–CIO, Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

Waldo F. KUSTERNS, Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent,

International Association of Bridge,
Structural and Ornamental Iron Work-
ers Local No. 433, Respondent-Inter-
venor.

Nos. 85–7521, 86–7023 and 85–7576.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 4, 1986.

Decided Nov. 20, 1986.

Victor Van Bourg, David Rosenfeld, Van
Bourg, Weinberg, Roger & Rosenfeld, San
Francisco, Cal., Robert D. Newman, Los
Angeles, Cal., for petitioner.

Joseph Oertel, Helen Morgan, N.L.R.B.,
Washington, D.C., Ellen Boardman, N.L.
R.B., San Francisco, Cal., for respondent.

Before SCHROEDER, CANBY, and
THOMPSON, Circuit Judges.

SCHROEDER, Circuit Judge.

We here review a pair of National Labor
Relations Board decisions arising out of
similar disputes between union members
and their locals. The disputes concerned

the locals' requirement that the members pay supplemental dues arrearages before being dispatched by the union for work. We previously held that the union committed an unfair labor practice when it insisted that the employees pay the arrearages before being dispatched to employers outside the bargaining unit in which the arrearages were incurred. *NLRB v. Iron Workers Local 118*, 720 F.2d 1031 (9th Cir.1983) (per curiam); *NLRB v. International Association of Bridge, Structural and Ornamental Iron Workers, Local No. 433*, 730 F.2d 768 (9th Cir.1984). We remanded to the Board for an award to make the employees whole. The Board awarded damages to Butler and denied them to Kusterns for failure to mitigate. We have consolidated the cases for purposes of this opinion because we have concluded that both cases are governed by similar principles and both individuals are entitled to back pay.

## BACKGROUND

Waldo Kusterns and William Butler are both members of the International Association of Bridge, Structural and Ornamental Iron Workers, AFL–CIO. Kusterns belongs to Iron Workers Local 433 and Butler to Iron Workers Local 118. Each local in 1977 was signatory to a multi-employer collective bargaining agreement which required employees working for signatory employers to pay supplemental dues, on the basis of each hour worked, as a condition of employment. Sometime in 1977, Kusterns and Butler, along with other iron workers, initiated court proceedings challenging the supplemental dues scheme under the Landrum-Griffin Act, 29 U.S.C. §§ 401 *et seq.* (1975). In accordance with their position in the lawsuit, both men refused to pay supplemental dues prior to job referrals.

In 1979, Kusterns and Butler registered for work at their respective locals' hiring hall in the "out-of-work book." At a time when Kusterns and Butler were near the top of the work list, the unions' dispatchers refused to refer the men because they were in arrears on their supplemental dues. Local 433 refused to refer Kusterns to a job at RPM Erectors, Inc. (RPM), and Local 118 refused to refer Butler to the Pittsburgh-Des Moines Steel Co. project at Valmy, Nevada (Valmy). RPM and Valmy were not members of the same employer bargaining units in which Kusterns and Butler had incurred dues arrearages.

In both cases, the NLRB found that the unions violated the National Labor Relations Act § 8(b)(1)(A) and (2), 29 U.S.C. § 158(b)(1)(A) and (2) (1982), by denying the dispatches to Kusterns and Butler. It reasoned that the men were under no obligation to pay the supplemental dues before dispatch to the RPM or Valmy sites, but had a seven-day statutory grace period after dispatch within which to pay the dues. *Id.* at § 158(f)(2). The Board ordered the locals to cease and desist from such unfair labor practices and to make the men whole for any loss of pay or benefits they may have suffered as a result of the discrimination. We enforced the Board's order as to Butler at 720 F.2d at 1032, and as to Kusterns in an unpublished decision entered January 26, 1984.

The lawsuit challenging the legality of the advance payment of supplemental dues was settled prior to the unfair labor practice hearing without impairing the unions' supplemental dues collection requirement. The net result was that, by virtue of the settlement, the union could insist upon payment of arrearages before dispatching members to employers in the unit where the dues were incurred. By virtue of the decisions in the unfair labor practice cases, however, the union could not so condition dispatch to an employer outside that bargaining unit.

Pursuant to this court's enforcement orders, the NLRB initiated back pay proceedings. The ALJ in each case determined that the respective locals owed Kusterns and Butler back pay for the period from the date of the locals' first unlawful dispatch refusal to the date the locals finally referred the men to comparable employment. The Board adopted the ALJ's back pay recommendation for Butler. It deter-

mined that Kusterns was not entitled to back pay, however, because he failed to mitigate his damages. The Board concluded that by refusing to pay his supplemental dues, Kusterns, although eligible for and wrongfully refused dispatch outside the unit, had rendered himself ineligible for dispatch to hundreds of jobs within the unit. According to the Board, he "essentially took himself out of the job market." Without citing any authority, the Board suggested that Kusterns could and should have met his mitigation obligations, without conceding his legal position in the pending litigation, by paying the supplemental dues under protest or into an escrow account.

Local 118 filed a motion for reconsideration of Butler's back pay award claiming that the Butler and Kusterns cases were factually and legally indistinguishable and arguing that the Board had enunciated two contrary rules. The Board then issued a "clarifying decision" stating that Butler had exercised reasonable diligence in his efforts to seek substantially equivalent interim employment by offering to pay his supplemental dues under protest. The Board, however, awarded back pay from the date of the local's wrongful refusal rather than from the date of the offer to pay under protest.

Because Kusterns was denied back pay on the ground that he had failed to mitigate damages, he petitions for review of the Board's decision in his case. Because Butler was awarded back pay from the union, the union petitions for review of the Board's order in that case.

## DISCUSSION

The principal legal issue presented is whether the Board erred in concluding, in the peculiar circumstances of these cases, that the employees' duty to mitigate damages included a duty to offer to pay under protest the very dues they were challenging. We hold that there was no such duty and that the Board in effect imposed too high a mitigation standard. As we perceive the positions of the parties, all

appear to agree that if there was no duty to offer to pay the dues under protest, then both Butler and Kusterns have satisfied any other mitigation obligations they may have had.

The general mitigation principles applicable to employees out of work as the result of an unfair labor practice are stated in *NLRB v. Mercy Peninsula Ambulance Service, Inc.*, 589 F.2d 1014 (9th Cir.1979). Although we there discussed the principles in the context of a back pay proceeding involving the liability of an employer rather than a union, the remedial powers of the Board flowing from section 10(c) of the Act, 29 U.S.C. § 160(c) (1982), are applicable to both employers and unions. Once the Board has established the unfair labor practice and the amount of back pay due the employee, the burden is upon the employer to produce evidence to mitigate its liability. *Mercy*, 589 F.2d at 1017. *See also NLRB v. United Brotherhood of Carpenters and Joiners*, 531 F.2d 424, 426 (9th Cir.1976) (imposing similar burden upon unions). The employer or union may satisfy that burden by establishing that the worker has actually received other earnings, or, by showing that the worker willfully incurred losses by, for example, taking himself out of the employment market. *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 198, 61 S.Ct. 845, 854, 85 L.Ed. 1271 (1941). The worker "is not held to the highest standard of diligence in his ... efforts to secure comparable employment —'reasonable' exertions are sufficient." *Mercy*, 589 F.2d at 1018. *See also Rasimas v. Michigan Department of Mental Health*, 714 F.2d 614, 624 (6th Cir.1983), *cert. denied*, 466 U.S. 950, 104 S.Ct. 2151, 80 L.Ed.2d 537 (1984); *Equal Employment Opportunity Commission v. Sandia Corp.*, 639 F.2d 600, 627 (10th Cir.1980); *NLRB v. Madison Courier, Inc.*, 472 F.2d 1307, 1318 (D.C.Cir.1972); *Heinrich Motors, Inc. v. NLRB*, 403 F.2d 145, 149 (2d Cir.1968); *NLRB v. Arduini Manufacturing Corp.*, 394 F.2d 420, 423 (1st Cir.1968).

In a typical case, like *Mercy*, the issue is whether the employer or the union has

established that the employee failed to make reasonable efforts to look for comparable employment beyond the entity charged with unlawful discrimination. The cases before us, however, differ. In these cases, the union maintains that the employees should have done more to obtain employment through the discriminating entity itself. Conceding, as they now must, that the union could not insist upon prepayment of the arrearages before dispatching Kusterns and Butler to the RPM or Valmy jobs, which were outside the bargaining unit, they maintain that the employees should have paid the dues in order to make themselves eligible for jobs within the bargaining unit.

The problem is that the dues at issue are the same. In arguing that work within the unit constitutes comparable work which the employees should have sought in place of the work they were denied, the union and the Board are in effect contending that the employees should have made a distinction in 1979 between jobs within the unit and outside of the unit. That is a distinction, however, which this circuit did not recognize until 1983. It is settled wisdom that mitigation efforts must be judged in light of the situation at the time the problem is presented, and not with the benefit of hindsight. *See* C. McCormick, *Law of Damages* 134 (1935). At the time that the underlying arrearages dispute divided these employees from their union, neither side was making any distinction between jobs outside or inside of the unit. The employees consistently maintained that they did not have to pay the arrearages before being dispatched anywhere, and the union consistently refused to refer them to any job until the arrearages were paid.

We are here considering a question of the damages to which the employees are entitled in order to make them whole for unfair labor practices we have held the union committed. As we have seen, the dues which were necessary for dispatch to jobs within the unit were the same dues that the union was insisting, wrongfully, that the employees pay for dispatch to the jobs outside the bargaining unit. Thus, the

thrust of the union and the Board's position is that as a prerequisite to recovering damages, the employees should have taken affirmative steps (by way of payment of the dues) to prevent the union from committing the unfair labor practice in the first place. We know of no authority for the proposition that, to mitigate damages, an employee must take affirmative steps which would eliminate all liability on the part of the union or the employer in the event that the employee eventually prevails. That would be the practical consequence of the Board's "mitigation" theory in these cases. It goes far beyond the reasonable diligence standard which we must follow. We hold that the exercise of reasonable diligence to secure comparable employment did not require the employees to pay, under protest or otherwise, the disputed amounts.

■ Two additional issues are raised. Kusterns argues that the ALJ improperly withheld state and federal taxes from his back pay specification. Because the Board denied Kusterns' back pay award and thereby bypassed the income tax issue, this question is not properly before us. The Board has not yet considered the issue.

■ Local 118 contests the Board's inclusion of subsistence pay in Butler's back pay award, claiming such payments constitute a form of reimbursement for work-related expenses that Butler did not incur. As the United States Court of Appeals for the Fifth Circuit and the NLRB have held, however, the "make whole" concept of section 10(c) includes payments, whether gratuitous or not, which the employee actually would have received absent the unlawful discrimination. *Nabors v. NLRB*, 323 F.2d 686, 690 (5th Cir.1963), *cert. denied*, 376 U.S. 911, 84 S.Ct. 666, 11 L.Ed.2d 609 (1964); *International Brotherhood of Electrical Workers Local 401*, 266 N.L.R.B. 870, 873 (1983) (allowing "automatic" $16.65 per day subsistence payment to employees at Valmy for entire back pay period). Similarly, we find the subsistence pay award appropriate.

The Board's decision in *Iron Workers Local 118* as to Butler is enforced; the petition for review in *Kusterns* is granted and the matter remanded to the Board for computation of back pay consistent with this opinion.