**F.E. HAZARD, LTD.,**
**Petitioner–Cross–Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD,**
**Respondent–Cross–Petitioner.**

**Nos. 191, 287, Dockets 90–4045, 90–4059.**

United States Court of Appeals, Second Circuit.

Argued Sept. 24, 1990.
Decided Oct. 26, 1990.

Gary L. Lieber, Schmeltzer, Aptaker & Shepard, P.C., Washington, D.C. (argued), Burton Kainen, Siegel, O'Connor, Schiff, Zangari & Kainen, Hartford, Conn., on brief, for petitioner-cross-respondent.

William M. Bernstein, N.L.R.B. (Jerry M. Hunter, Gen. Counsel, Robert E. Allen, Assoc. Gen. Counsel, Aileen A. Armstrong, Deputy Assoc. Gen. Counsel, N.L.R.B., Washington, D.C., on brief), for respondent-cross-petitioner.

Before NEWMAN, PIERCE and ALTIMARI, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

Petitioner F.E. Hazard, Ltd. ("Hazard") seeks review of the February 26, 1990, supplemental order of the National Labor Relations Board affirming the July 14, 1989, decision of an Administrative Law Judge fixing the amount of back wages owed a former employee, Kenneth Moffitt, who had been discharged in violation of section 8(a)(1), (3) and (4) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), (3), (4) (1988). The Board has filed a cross-petition for enforcement. In an earlier proceeding, the Board had ordered Moffitt's reinstatement and the payment of back wages after determining that Hazard had discharged Moffitt in retaliation for joining a union and for his participation in the filing of unfair labor charges against the company. We grant the petition for review and remand for further findings.

■ Hazard primarily contends that Moffitt did not fulfill his duty to mitigate the loss in earnings suffered during the period of his discriminatory discharge because he chose to remain self-employed rather than accepting more lucrative offers of employment. The Board reduces an employee's final backpay award by the amount of any losses "willfully incurred" by a "clearly unjustifiable refusal to take desirable new employment." *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 198, 199–200, 61 S.Ct. 845, 854, 855, 85 L.Ed. 1271 (1941). In making this determination, the Board must inquire into whether an employee has made " 'an honest good faith effort' " to mitigate losses. *Heinrich Motors, Inc. v. NLRB*, 403 F.2d 145, 149 (2d Cir.1968) (quoting *NLRB v. Cashman Auto Co.*, 223 F.2d 832, 836 (1st Cir.1955)). It is also well settled that "self-employment is an adequate and proper way for the injured employee to attempt to mitigate his loss of wages," *Heinrich Motors*, 403 F.2d at 148 (citations omitted), and that "a person is not required to look for other employment while he is reasonably engaged in self-employment," *id.* at 149.

■ The ALJ noted that the day after his discharge, Moffitt signed the union's "out-of-work book," thereby becoming eligible for referrals. During the next three or four weeks, he regularly checked with the union and was told that no work was available. He therefore decided to pursue his trade as an auto mechanic in his own shop, soliciting business repairing cars and farm vehicles. Thereafter, on three occasions Moffitt received, through his union, offers of full-time, permanent employment with the Worrad Company. The positions apparently involved substantially similar wages and working conditions to those Moffitt had at Hazard. Moffitt refused all three offers, preferring to continue his self-

738

employment. With respect to these refusals, the ALJ found as follows:

> I find that it was not unreasonable for Moffitt to refuse the May 11 and subsequent referrals. *It* was only five or six weeks after he had decided to pursue his repair business on a full-time basis and he had received repair orders from new customers. If he had accepted full-time employment *at that time,* he could never have completed the work for these customers in a timely manner. This would have been an inauspicious, and possibly fatal, *beginning* for his business.

Decision of July 14, 1989, at 5 (emphasis added).

The ALJ's decision, adopted without elaboration by the Board, adequately explains why it was not unreasonable for Moffitt to reject the first referral for employment with Worrad, but makes no findings with respect to the second and third referrals, which were made months later. Though the ALJ mentions "subsequent referrals" in his conclusory statement, it is evident from the emphasized words in the detailed findings just quoted that he was focusing only on the initial referral of May 11. Moreover, what was said about the May 11 referral does not necessarily apply with equal validity to the two subsequent referrals. At some point in time, the "getting started" argument loses force as a justification for spurning a well-paying job in preference to continued self-employment. And if the "cars in the shop" argument could justify repeated refusals, any person whose service to customers requires more than a day's work could remain self-employed forever in preference to better paying employment. The self-employed have that option and need not *"look for"* other employment while ... reasonably engaged in self-employment," *Heinrich Motors,* 403 F.2d at 149 (emphasis added), but at some point a refusal to accept substantially equivalent employment that is offered terminates the former employer's back-pay obligation. *See Ford Motor Co. v. EEOC,* 458 U.S. 219, 231–32, 102 S.Ct. 3057, 3065–66, 73 L.Ed.2d 721 (1982). Before we can determine whether the Board properly subjected Hazard to back-pay liability for Mof-

fitt continuing beyond the dates of the refusals of the second and third Worrad referrals, we require specific findings directed to those refusals.

Hazard also contends that the Board departed from its prior precedents in calculating Moffitt's net earnings. In particular, Hazard objects to the Board's subtraction of depreciation expenses and wages paid to Moffitt's wife in calculating the net profits of Moffitt's business. This contention is meritless. In determining the appropriate backpay award, the Board previously has deducted "ordinary and necessary" business expenses from an unlawfully discharged employee's interim earnings. *See California Dental Care, Inc.,* 281 NLRB 578, 582 (1986) (permitting deduction of depreciation). In the pending case, unlike *Boland Marine & Manufacturing Co.,* 285 NLRB 624 (1987), the record shows that each of the contested expense items clearly represent actual costs rather than paper losses incurred for tax purposes.

Hazard's petition for review is granted, the Board's cross-petition to enforce is denied, and the case is remanded to the Board for further findings.