NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

F.E. HAZARD, LTD., Respondent.

No. 995, Docket 91–4191.

United States Court of Appeals,
Second Circuit.

Argued Feb. 26, 1992.

Decided March 23, 1992.

Lisa Richardson Shearin, Washington, D.C. (Linda Dreeben, Supervisory Atty., Jerry M. Hunter, General Counsel, D. Randall Frye, Acting Deputy General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, N.L.R.B., Washington, D.C., on the brief), for petitioner.

Susan M. Wright, New Haven, Conn. (Diana Garfield, Siegal, O'Connor, Schiff, Zangari & Kainen, on the brief), for respondent.

Before: TIMBERS, NEWMAN and WINTER, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This petition to enforce a second supplemental order of the National Labor Relations Board specifically concerns a narrow dispute as to the duration of an employer's backpay obligation with respect to a wrongfully discharged employee engaged in self-employment. More broadly, however, the petition raises an issue concerning the role of the Board in complying with a remand ordered by a court of appeals. Because we conclude that the Board has failed to make the requisite findings that would support its backpay order, we deny enforcement.

In the prior enforcement proceeding concerning this case, we considered the Board's first supplemental order fixing the amount of backpay that petitioner F.E. Hazard, Ltd. ("Hazard") was required to pay to Kenneth Moffitt, whom Hazard had discharged in violation of section 8(a)(1), (3), (4) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), (3), (4) (1988). *See F.E. Hazard, Ltd. v. N.L.R.B.*, 917 F.2d 736 (2d Cir.1990) ("*Hazard I*"). It was undisputed that the backpay obligation ended no later than the date on which Hazard offered to reemploy Moffitt. The issue was whether the backpay obligation ended sooner at some point during Moffitt's period of self-employment in the car repair business. During that period, Moffitt had been offered on three occasions fulltime, permanent employment with the Worrad Company at wages and working conditions substantially similar to those previously en-

408

joyed by Moffitt at Hazard. The offers were made on·May 11, July 20, and October 6 of 1987, and each was rejected.

We ruled that substantial evidence supported the Board's decision that the rejection of the May 11 offer did not terminate Hazard's backpay obligation to Moffitt, but that neither the Administrative Law Judge nor the Board had made findings concerning the rejection of the July 20 and October 6 offers. We therefore remanded for findings so that we could review the lawfulness of the Board's decision that Moffitt's rejection of the second and third offers did not terminate Hazard's backpay obligation. In requiring findings directed to these two offers, we outlined two considerations. First, although recognizing the Board's point that a discharged employee is entitled to some leeway in getting started with self-employment following a wrongful discharge, we said, "At some point in time, the 'getting started' argument loses force as a justification for spurning a well-paying job in preference to continued self-employment." *Hazard I,* 917 F.2d at 738. Second, although recognizing the Board's further point that a self-employed car repairer is entitled to some leeway in finishing work he has undertaken, we said, "[I]f the 'cars in the shop' argument could justify repeated refusals, any person whose service to customers requires more than a day's work could remain self-employed forever in preference to better paying employment." *Id.* Finally, we observed that "at some point a refusal to accept substantially equivalent employment that is offered terminates the former employer's back-pay obligation. *See Ford Motor Co. v. EEOC,* 458 U.S. 219, 231–32, 102 S.Ct. 3057, 3065–66, 73 L.Ed.2d 721 (1982)." *Id.*

On remand, the Board began its reconsideration by expressing the view that *Ford Motor Co.* was not "applicable" to the pending case because the offer terminating the backpay obligation in that case had been made by the employee's former employer. Then, recasting the scope of the inquiry, the Board said that since the July 20 and October 6 offers had been made by a third party, the issue was "simply whether the discriminatee was engaged in legit-imate interim employment." Finally, endeavoring to comply with our request for findings concerning the second and third offers, the Board said (a) that it believed the rejections were "reasonable," (b) that Moffitt had outstanding car repair commitments on the dates both offers were made, and (c) that it was "not unreasonable" to reject the offers. *See F.E. Hazard, Ltd. v. Moffitt,* 330 N.L.R.B. No. 130 (1991).

The Board's dislike of our citation of *Ford Motor Co.* affords no basis for ignoring the point expressed by the Supreme Court in that opinion and repeated in our opinion directing the remand. We cited the opinion for its statement that an unemployed claimant "forfeits his right to backpay if he refuses a job substantially equivalent to the one he was denied." *Ford Motor Co.,* 458 U.S. at 231–32, 102 S.Ct. at 3065–66 (footnote omitted). That statement is not limited to job offers extended by the former employer. Indeed, the case cited by the Supreme Court in support of the quoted statement, *NLRB v. Arduini Mfg. Corp.,* 394 F.2d 420 (1st Cir.1968), concerned an employee (Gibeault) who lost his entitlement to continued backpay by his delay in accepting an offer from a company that was not his former employer.

Turning to the Board's effort to make findings responsive to our remand, we conclude that the Board has failed to make findings that would permit us to uphold its conclusion that Moffitt's rejection of the July 20 and October 6 offers did not terminate Hazard's backpay obligation. To state generally in one finding that the rejections were "reasonable" and in another that they were "not unreasonable" provides no indication of the Board's thinking with respect to the particular circumstances that might have made Moffitt's continued self-employment reasonable in the face of offers of bona fide employment. The repetition of the "cars in the shop" argument is also unilluminating. We do not agree that the issue, as recast by the Board, is whether his self-employment was "legitimate." We were not in doubt on that score. We remanded for specific findings to permit a determination of whether

the point had been reached where Moffitt's rejection of job offers, several months after his discharge, revealed his preference for self-employment. The Board made no findings about Moffitt's plans, intentions, or activities. Having afforded the Board a clear opportunity to support its order for backpay after the July 20 and October 6 job rejections, we deny the Board's petition for enforcement.