Carmen **ROBLES**, Plaintiff,

v.

**COX & COMPANY, INC.**, Defendant.

No. 99 CIV. 1075(CBM).

United States District Court,
S.D. New York.

July 31, 2001.

---

Adeline Ellis, New York City, for Plaintiff.

George F. Brenlla, Clifton Budd & De-Maria, LLP, New York City, for Defendant.

## OPINION AND ORDER

MOTLEY, District Judge.

Plaintiff, a female employee of defendant, filed this Title VII complaint on February 3, 1999, pleading *quid pro quo* and hostile work environment sexual harassment pursuant to 42 U.S.C. § 2000e, *et seq.* and New York State Human Rights Law, Executive Law § 290 *et seq.*[1] The case was assigned to court-ordered mediation on September 27, 1999. However, the mediation was not successful. On April 7, 2000 defendant filed the instant motion for summary judgment. At a hearing held on December 7, 2000, this court heard arguments on the motion.

For the reasons set forth below, defendant's motion for summary judgment is DENIED.

## BACKGROUND

The following facts, unless otherwise noted, are undisputed:

Plaintiff worked for defendant as an assembly-line worker from July 30, 1968 until October 9, 1998, over 30 years. Plaintiff claims that a supervisor, Herman Rivera, asked her out in February of 1988. They dated consensually until plaintiff terminated the relationship in 1991 upon learning that Rivera was dating another woman. By December of 1991, Rivera had been promoted to a management position and was plaintiff's supervisor.

In December 1992, Rivera, now married, requested that plaintiff resume their former sexual relationship. Plaintiff objected to Rivera's advances and Rivera threatened to fire her if she did not comply. Plaintiff claims that Rivera repeatedly forced plaintiff to have sex on and off company property and made lewd and embarrassing statements about plaintiff in the presence of others at the workplace until she terminated the relationship. Rivera continued to regularly force plaintiff to have sex with him until about December 1997, when plaintiff informed Rivera that she would no longer have sex with him. For the purposes of summary judgment defendant does not dispute plaintiff's allegations of sexual encounters with Rivera or that they constituted unlawful sexual harassment.

Plaintiff has presented evidence which, viewed in its most favorable light, shows that after she ended the sexual relationship with Rivera in 1997, Rivera and other supervisors began a campaign to retaliate against her. This campaign included accusations about the quality of plaintiff's

---

1. Plaintiff originally pled five causes of action. Her third and fourth claims, based on New York State tort law, claiming battery and in-tentional infliction of emotional distress, were dismissed pursuant to stipulation.

work, attempts to interfere with plaintiff's use of accrued leave and/or vacation time to care for her child, continued use and tolerance of lewd and embarrassing comments and behavior directed at plaintiff, no increase in wages and exposure to harmful substances at work.

On October 2, 1998, defendant's supervisors, including Rivera, broke into plaintiff's work locker and fired her, purportedly on the basis of documents they found there. Defendant claims that plaintiff was ultimately fired because her direct supervisor, Alex Zavaleta, suspected that plaintiff might have some old product blueprints in her possession. Zavaleta needed the blueprints and asked plaintiff for them several times over the course of several days. Defendant claims that plaintiff denied having the documents. Plaintiff said she could not check her locker because she had forgotten the combination. Plaintiff states that she asked Zavaleta to get the locker combination for her because she did not remember it. Without alerting plaintiff, Zavaleta asked two supervisors (but not Rivera) to break open plaintiff's locker. The supervisors did so. Defendant claims the two supervisors found the blueprints in plaintiff's locker, did not remove them and informed Zavaleta.

Zavaleta then asked Rivera, who was not present at the original opening of plaintiff's locker, to remove the blueprints from plaintiff's locker. According to plaintiff, Rivera then called her into his office and informed her that they had found the papers in her locker. Frank A. DeBlanco, defendant's Director of Operations, fired plaintiff later that day, purportedly on the basis of plaintiff's failure to produce the blueprints as well as the fact that plaintiff received five disciplinary warnings throughout the period from 1993–1998 regarding lateness and aggressive behavior. Plaintiff does not deny that Zavaleta had been requesting the blueprints. However, plaintiff claims she was never shown the documents and contests the allegation that any documents justifying termination were in her locker.

Defendant does not deny that Rivera and plaintiff were engaged in a sexual relationship. Rivera admitted the sexual relationship (claiming it was consensual) during the course of discovery of the instant case. Defendant fired Rivera on November 24, 1999 and, in a letter dated December 10, 1999, offered plaintiff reinstatement including preservation of her seniority and backpay. The offer did not require plaintiff to drop her case against the company. Plaintiff has not accepted this offer but maintains that she has not rejected it either. Rather, plaintiff maintains that she is merely considering the offer.

## DISCUSSION

### I. Summary Judgment Standard

The standard for summary judgment is that "[u]ncertainty as to the true state of any material fact defeats the motion." *Gibson v. Am. Broad. Companies*, 892 F.2d 1128, 1132 (2d Cir.1989). The movant must demonstrate the absence of a genuine issue of material fact.[2] If the

---

2. Defendant claims that plaintiff cannot establish any disputed issue of material fact. As support for this, defendant claims that a number of facts were admitted by plaintiff, because she did not deny them in her Rule 56.1 response. In none of the cases cited by defendant as support for this proposition does the court hold, as defendant would have us believe, that where in her Rule 56.1 statement, as here, plaintiff "[d]enies knowledge and information sufficient to form a belief" as to the truth of a statement in defendant's Rule 56.1 statement, she has admitted that statement. In the cases cited by defendant, *Dusanenko v. Maloney*, 726 F.2d 82 (2d Cir. 1984), *Hodge v. RCA Global Communications*,

movant carries this burden, the burden then shifts to the non-moving party to produce concrete evidence sufficient to establish a genuine unresolved issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir. 1988). The court then must view the facts in the light most favorable to the non-movant and give that party the benefit of all reasonable inferences from the evidence that can be drawn in that party's favor. *See Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir.2000). The court neither weighs evidence nor resolves material factual issues but only determines whether, after adequate discovery, any such issues remain unresolved because a reasonable factfinder could decide for either party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Gibson,* 892 F.2d at 1132. However, neither conclusory statements, conjecture, nor speculation suffice to defeat summary judgment. *See Kulak v. City of New York,* 88 F.3d 63, 71 (2d Cir.1996).

## II. Substantive Title VII Principles

■■■ Title VII forbids an employer from discharging or discriminating against any individual, with respect to conditions of employment, on the basis of gender. An individual alleging gender discrimination may proceed under either or both of two theories: direct (or *"quid pro quo"*) discrimination and "hostile workplace environment". *See Leibovitz v. New York City Transit Authority,* 252 F.3d 179, 188 (2d Cir.2001). Plaintiff in this case pleads both *quid pro quo* and hostile workplace environment harassment. To establish a *prima facie* case of employment discrimination under either theory, "a plaintiff must show, *inter alia,* that she was subjected to adverse employment action, under circumstances giving rise to an inference of prohibited discrimination." *Fitzgerald v. Henderson,* 251 F.3d 345, 356 (2d Cir.2001).

■■■ New York courts require the same standard of proof for claims brought under the New York State Human Rights Law as for those brought under Title VII. *See Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 764 (2d Cir.1998). Therefore, the analysis of defendant's summary judgment motion below applies to both plaintiff's federal and state claims.

Defendant argues that this case can be decided on summary judgment because: (A) plaintiff has not established a *prima facie* case of *quid pro quo* harassment as required by Title VII; (B) even if plaintiff can make out a *prima facie* case of hostile environment harassment, defendant has an affirmative defense in that it exercised reasonable care to prevent sexual harassment; (C) many of plaintiff's claims are time-barred; and (D) plaintiff is not entitled to front or backpay because she refused defendant's offer of reinstatement. These arguments are discussed below.

### A. Quid Pro Quo Harassment

■■■ "[T]o establish a *prima facie* case of *quid pro quo* harassment, a plaintiff must present evidence that she was

1994 WL 240373 (S.D.N.Y.1994), and *Chartier v. Matthews Associates,* 1994 WL 582938 (S.D.N.Y.1994), the plaintiffs failed to file any 56.1 response at all. In the instant case, plaintiff responded as described above, denying knowledge and information sufficient to form a belief. Therefore, the only two facts

from defendant's 56.1 statement actually admitted by plaintiff are paragraphs 8 (that Rivera was never her direct supervisor) and 52 (that physical contact with Rivera ceased after December, 1997). Neither of these is dispositive.

subject to unwelcome sexual conduct, and that her reaction to that conduct was then used as the basis for decisions affecting the compensation, terms, conditions or privileges of her employment." *Fitzgerald,* 251 F.3d at 356. Applying these factors to the evidence before this court, this court now finds that plaintiff has established a *prima facie* claim of *quid pro quo* harassment for the purposes of summary judgment.

Plaintiff has presented evidence that Rivera forced her to have sex with him by threatening her with adverse employment action. In particular, defendant's own admission that a sexual relationship existed between plaintiff and Rivera, which Rivera concealed, is compelling evidence that circumstances giving rise to an inference of discrimination exist. Further, the circumstances surrounding plaintiff's termination suggest discrimination. The documents allegedly found in plaintiff's locker were discovered by a supervisor alleged to be friends with Rivera. Plaintiff has produced an inter-office memorandum of defendant's that suggests that Rivera participated in the decision to fire plaintiff. Finally, plaintiff states in her affidavit that it was Rivera who first reprimanded her after her locker was opened. Therefore, plaintiff has established a genuine issue of material fact as to the question of whether she was fired in a discriminatory manner.

■ Once plaintiff has met her initial burden of presenting a *prima facie* case of *quid pro quo* discrimination, the employer may avoid liability by articulating some "legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To avoid summary judgment, the burden then shifts back to the employee to show that the employer's stated reason is in fact a pretext for discrimination and that unlawful discrimination was the real reason for the discharge. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 525, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 567 (2d Cir. 2000).

■ Defendant claims that it cannot be liable for *quid pro quo* discrimination against plaintiff, because it was not aware of plaintiff's sexual relationship with Rivera and because it had legitimate, nondiscriminatory reasons for firing plaintiff, i.e., her failure to produce the blueprints. Be that as it may, plaintiff has presented evidence that, taken in its most favorable light, shows she was prepared to open her locker at any time. Plaintiff states that she asked her supervisor to get the locker combination for her because she did not remember it. A reasonable factfinder could find it improbable that an employer would fire an employee of thirty years in those circumstances. Furthermore, as discussed above, plaintiff has presented evidence that could lead a reasonable factfinder to conclude that Rivera took part in making the decisions to deny plaintiff raises, move her to dangerous work assignments and fire her as a retaliation for her refusal to have sex with him. Therefore, plaintiff has produced evidence that defendant's non-discriminatory reason for firing her was pretextual. Plaintiff's claim of *quid pro quo* harassment survives summary judgment on that basis.

### B. Hostile Environment Harassment

■ To survive summary judgment on a Title VII claim of hostile work environment harassment, an employee must plead a *prima facie* case by establishing two elements: (1) that the harassment permeated the workplace with discriminatory intimidation, ridicule and insult that was sufficiently severe or pervasive to al-

ter the conditions of plaintiff's employment and create an abusive working environment; and (2) that she has a "specific basis for imputing the hostile work environment to the employer." *Fitzgerald,* 251 F.3d at 356–57. An employer is presumed responsible for the hostile work environment where the perpetrator of the harassment was a supervisor with immediate or successively higher authority over the employee. *See Burlington Indus. Inc. v. Ellerth,* 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *Fitzgerald,* 251 F.3d at 356–57; *Cruz,* 202 F.3d at 572.

■ Defendant has stipulated for the purposes of summary judgment that Rivera's actions constituted hostile workplace environment harassment. Therefore, plaintiff has established the first element of her *prima facie* hostile workplace environment case. In addition, it was established at the hearing in this case on December 7, 2000 that Rivera was one management level above plaintiff's direct supervisor. Therefore, although he was not plaintiff's direct supervisor, Rivera was a supervisor with authority over plaintiff. This is further borne out by defendant's inter-office memoranda which copy Rivera regarding disciplinary action against plaintiff. Therefore, defendant is presumptively liable for harassment by Rivera, a supervisor.

■ An employer may rebut the presumption that it is liable under Title VII for hostile work environment harassment by a supervisor if it can plead and prove, as an affirmative defense, that: (1) the employer exercised reasonable care to prevent and correct promptly any sexual harassment by such supervisor and (2) the employee unreasonably failed to avail herself or himself of any corrective or preventative opportunities provided by the employer or to avoid harm otherwise. *See Burlington,* 524 U.S. at 765, 118 S.Ct. 2257; *Cruz,* 202 F.3d at 572.[3]

Defendant argues that it had a policy by which employees could complain to a high level manager (in plaintiff's case, Frank Zavaleta) (the "Open Door Policy"). Therefore, defendant claims it exercised reasonable care in the prevention of sexual harassment. Defendant further claims that plaintiff was made aware of the Open Door Policy but unreasonably failed to utilize it to complain about Rivera's alleged harassment. As such, defendant claims it is not liable for any harassment by Rivera. Viewing the evidence in the light most favorable to the plaintiff, defendant cannot carry its burden on this defense. Defendant has not established that: (1) the Open Door Policy constitutes reasonable care; or (2) plaintiff unreasonably failed to take advantage of the Open Door Policy.

■ A grievance policy which does not specifically address sexual harassment does not, on its own, provide sufficient evidence of reasonable care for a grant of summary judgment. Although it is not necessary in every instance as a matter of law, generally an employer must distribute a stated policy on harassment and have a complaint procedure in order to benefit from the presumption on summary judgment that the employer exercised reasonable care. *See Faragher v. City of Boca*

---

**3.** The defense of reasonable care is not available "when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." *See Burlington,* 524 U.S. at 765, 118 S.Ct. 2257. In this case, plaintiff alleges both hostile environment and *quid pro* *quo* harassment. As this court has found a genuine issue of material fact, to be decided at trial, as to whether *quid pro quo* harassment, hostile workplace harassment or both occurred, this court will address defendant's defense of reasonable care.

*Raton,* 524 U.S. 775, 778, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). "[T]he mere existence of a grievance procedure ... coupled with [plaintiff's] failure to invoke that procedure" does not serve to insulate an employer from liability on summary judgment. *See Meritor Savings Bank FSB v. Vinson,* 477 U.S. 57, 72, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986); *Bayard v. Riccitelli,* 952 F.Supp. 977, 985 (E.D.N.Y.1997) (holding that a mere showing that plaintiff understood the employer's management structure and to whom she should complain in the event of dissatisfaction was insufficient to support a grant of summary judgment). Where a policy does not alert employees to their employer's interest in correcting sexual harassment, it does not, on its own, constitute reasonable care. *See Meritor,* 477 U.S. at 72–73, 106 S.Ct. 2399.

 In this case, the Open Door Policy does not mention sexual harassment or discrimination of any kind. Furthermore, the policy specifically states that it is "important not to undermine the supervisor's and first line Manager's authority." Defendant does not present any evidence other than the Open Door Policy that it took reasonable care to avoid sexual harassment. Furthermore, plaintiff claims that Rivera told her that he had the upper level management "in his pockets." A rational factfinder might find both that defendant's policy was not reasonable in deterring harassment by supervisors and that plaintiff reasonably feared complaining to management about sexual harassment by her supervisor.

Defendant argues that plaintiff did understand that the complaint procedure applied to sexual harassment because she complained to her supervisor when a co-worker exposed himself to her. However, plaintiff has testified that she feared retaliation from Rivera, a supervisor, were she

to report him, while she had no reason to fear reporting a co-worker who was not management. The case relied upon by defendant, *Fierro v. Saks Fifth Avenue,* 13 F.Supp.2d 481 (S.D.N.Y.1998), for the proposition that fear of repercussions does not excuse a victim of discrimination from alerting her employer to the discrimination is inapposite. In that case, the management had an anti-harassment policy and was, therefore, entitled to the defense that, as a matter of law, it had exercised reasonable care in preventing discrimination. In the instant case, as in *Bayard,* cited above, defendant had no anti-harassment policy and, therefore, the question of whether plaintiff reasonably failed to complain about Rivera's behavior is a question for the factfinder. *See Bayard,* 952 F.Supp. at 985. Hence, this court denies summary judgment to defendant on the hostile work environment claims.

### C. The Timeliness of the Complaint

 Defendant further argues that any of plaintiff's claims relating to sexual harassment prior to December 25, 1997 are time-barred because plaintiff must file with the EEOC within 300 days of the alleged harassment. Plaintiff filed her charge on October 21, 1998. Plaintiff responds that the continuing violation doctrine, which extends the limitations period for ongoing discrimination, applies in her case. *See Quinn,* 159 F.3d at 765–66.

 Under the continuing violation exception to the Title VII limitations period, if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely. The plaintiff is therefore entitled to bring suit challenging all conduct that was a part of the ongoing violation even if the conduct occurred outside the limita-

tions period. *See Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir.1994); *Lambert v. Genesee Hospital,* 10 F.3d 46, 53 (2d Cir. 1993), *cert. denied,* 511 U.S. 1052, 114 S.Ct. 1612, 128 L.Ed.2d 339 (1994). A continuing violation may be found "where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Quinn,* 159 F.3d at 765–66; *see also Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708 (2d Cir.1996); *Cornwell,* 23 F.3d at 704 (holding that plaintiff had established a continuing violation where she suffered the same kinds of harassment at the hands of the same supervisory personnel from 1981 to 1983 and then again in 1986, where the three-year suspension of harassment was due only to plaintiff's absence from the workplace on account of illness).

Defendant argues that: (1) plaintiff's termination was unrelated to the harassment; and (2) plaintiff alleges no harassment between the cessation of sexual relations with Rivera in December 1997 and plaintiff's termination in October 1998. Therefore, defendant claims that the continuing violation doctrine does not apply to plaintiff's case. Defendant misrepresents the evidence before this court. Plaintiff claims ongoing harassment by Rivera and his peers beginning from her termination of the sexual relationship up until she was terminated from her job. In her EEOC complaint and by affidavit, plaintiff alleges that after she terminated her sexual relationship with Rivera, he continued to make harassing phone calls to her at home until she changed her phone number in 1998. Plaintiff further states that Rivera and his friends at the company routinely subjected plaintiff to unreasonably close monitoring of her work after she terminated the relationship with Rivera. In particular, plaintiff claims they falsely accused her of reading a newspaper on the job, refused her

routine requests to leave her work area for supplies and harassed her about her use of approved leave time. Plaintiff alleges that this routine harassment did not cease until she was transferred to a different department on June 15, 1998. Plaintiff further alleges that Rivera refused for a year (from the summer of 1996 until sometime in 1997) to have plaintiff transferred from a workplace area where she suffered from an allergy from exposure to fiberglass. Plaintiff has presented evidence that in April of 1998, Rivera arranged for plaintiff to be transferred back to work with the allergy-causing fiberglass. Plaintiff also presented evidence in the form of company memoranda that Rivera participated in adverse decisions regarding her employment throughout the time in question, including at the time of plaintiff's termination.

Regarding the facts in the light most favorable to the non-movant, as this court must, plaintiff's evidence sets forth a continuing violation. *See Quinn,* 159 F.3d at 764. As discussed above, plaintiff alleges continuous harassment of a similar nature, at the hands of the same personnel. Therefore, because there exist genuine unresolved issues of material fact as to whether Rivera harassed plaintiff post-relationship, had control over employment decisions affecting her and arranged her firing, summary judgment on the basis of the timeliness of the complaint is denied.

### D. *Defendant's Offer of Reinstatement*

Finally, defendant claims that because it has made an unconditional offer of reinstatement to plaintiff, it cannot be held liable for backpay. As set forth below, the evidence shows as a matter of law that defendant's offer of reinstatement was unconditional and that plaintiff would be unreasonable in rejecting it. However, plaintiff has established a genuine issue of

material fact as to whether she has rejected the offer.

■■■■■ An employee discharged in violation of Title VII has a statutory duty to attempt to mitigate her damages by using reasonable diligence in finding other suitable employment. *See* 42 U.S.C. § 2000e–5(g)(1); *Ford Motor Co. v. EEOC,* 458 U.S. 219, 241, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982); *Hawkins v. 1115 Legal Service Care,* 163 F.3d 684, 695–96 (2d Cir.1998). "In order to reduce the meritorious claimant's entitlement to backpay, the defendant employer has the burden of demonstrating that she has failed to attempt to mitigate. This burden may be met by establishing (1) that suitable work existed, and (2) that the employee did not make reasonable efforts to obtain it. The ultimate question 'is whether the plaintiff acted reasonably in attempting to gain other employment or in rejecting proffered employment.'" *Hawkins,* 163 F.3d at 695–96 (citations omitted). Therefore, as a matter of law, a plaintiff's rejection of an unconditional offer of reinstatement by an employer in a Title VII case, if the refusal is unreasonable, "ends the accrual of potential backpay liability." *Ford,* 458 U.S. at 241, 102 S.Ct. 3057. To toll the accrual of backpay as of the date of the employee's rejection, an employer need only offer reinstatement to "a job substantially equivalent to the one [s]he was denied." *Light-foot v. Union Carbide,* 110 F.3d 898, (2d Cir.1997). Generally, "[w]hether the employer made an unconditional offer of reinstatement, and whether the employee rejected that offer, are questions of fact to be determined by the district court." *See Clarke v. Frank,* 960 F.2d 1146, 1151 (2d Cir.1992).

This court addresses below the separate issues of: (1) whether plaintiff would be unreasonable in rejecting defendant's offer of reinstatement and (2) whether plaintiff rejected the offer.

*1. The Reasonableness of the Rejection*

In this case, plaintiff does not dispute that the offer was unconditional. On December 10, 1999, upon learning that Rivera had lied about the nature of his relationship with plaintiff, defendant employer offered plaintiff reinstatement to the job she had held before termination, backpay to the date of her termination and reinstatement of benefits and seniority to the level they would have been if plaintiff had never been terminated. The reinstatement letter noted that Rivera had been fired. It stated that the company would take every reasonable step to assure that no further sexual harassment would be tolerated. In addition, at plaintiff's request, the president of defendant employer met personally with plaintiff to assure her that she would be welcome to return to the company. Nevertheless, plaintiff claims that she would be reasonable in rejecting the offer due to the facts that: (a) defendant has not withdrawn its contention that plaintiff was insubordinate; (b) defendant continues to employ friends of Rivera, including, possibly, Rivera's wife; and (c) the allegedly harassing environment at defendant's workplace caused her to be depressed, a condition which she fears would be exacerbated by returning.

■■■■■ A plaintiff may avoid the tolling of backpay damages by showing that she was reasonable in turning down the offer of reinstatement. *See Hawkins,* 163 F.3d at 695–96. "Generally, it is the duty of the trier of fact to weigh the evidence to determine whether a reasonable person would refuse the offer of reinstatement." *Pierce v. F.R. Tripler & Co.,* 955 F.2d 820, 830 (2d Cir.1992). However, in this case, plaintiff has not produced any evidence of a genuine issue of material fact on the

issue of the reinstatement. Plaintiff does not deny that defendant's offer was unconditional or that she received assurances that no further harassment would be permitted. Therefore, this court now evaluates the reasonableness of plaintiff's refusal to accept the offer for the purposes of summary judgment.

■ The mere fact that defendant has not withdrawn its allegations that plaintiff was fired for insubordination does not provide a reasonable basis for plaintiff to refuse defendant's offer of reinstatement. In making an unconditional offer of reinstatement, the defendant employer is not obligated to insure the claimant against the possibility that the defendant might prevail at trial. See Ford, 458 U.S. at 237 n. 26, 102 S.Ct. 3057; Lightfoot, 110 F.3d at 908. As such, there is no requirement that defendant withdraw its defense against plaintiff's claims.

■ Furthermore, this court now finds that the assertions that defendant still employs friends of the harasser and that returning to work for defendant would cause her mental anguish are insufficient to excuse plaintiff's rejection of an offer of reinstatement. See Lightfoot, 110 F.3d at 908 (rejecting claims that plaintiff's rejection of the offer of reinstatement was reasonable because accepting reinstatement would return him to a harassing environment); Clarke, 960 F.2d at 1151 (narrowing the focus of the Ford analysis to only two factors: (1) was the offer unconditional and (2) did the plaintiff reject the offer).

Defendant's offer of reinstatement was unambiguously unconditional. The offer went beyond what is required by law to toll an employer's backpay liability, offering plaintiff retroactive seniority and backpay. See Ford, 458 U.S. at 234, 102 S.Ct. 3057 (holding that an offer of retroactive seniority is not required to toll backpay). Plaintiff has received assurances that no further harassment will be tolerated if she returns. Plaintiff has presented no evidence that defendant's assurances are insincere. Therefore, plaintiff has not raised a genuine issue of material fact as to whether she would be unreasonable in rejecting defendant's offer.

### 2. The Rejection of the Offer

■ To toll backpay liability, an employer must establish not only that it made an unconditional offer but that plaintiff rejected it. See Clarke, 960 F.2d at 1152. Backpay "accrues until the date that an aggrieved employee rejects the employer's reinstatement offer." Clarke, 960 F.2d at 1152. As this court has held that a rejection of defendant's reinstatement offer in this case would be unreasonable, if plaintiff has rejected defendant's offer, defendant's backpay liability will be tolled as of the date of plaintiff's rejection. However, plaintiff has established a genuine issue of material fact for trial as to whether she has rejected defendant's offer.

Defendant argued at a hearing on December 7, 2000 that plaintiff had in fact turned down the offer verbally but refused to do so in writing. It is undisputed that plaintiff did not accept the reinstatement offer. However, plaintiff claims that she has not accepted or rejected the offer of reinstatement. Rather, plaintiff states that she is still considering the offer. Plaintiff asserts in her affidavit that as defendant has agreed to hold the offer open, she will not return to work for defendant until she is assured she will not be subjected to further harassment. This court notes that, as of the December seventh hearing, counsel for plaintiff stated that plaintiff was "not accepting at this time an offer of reinstatement." (Tr. at 24.)

The Second Circuit has noted that "at some point a [plaintiff's] refusal to accept substantially equivalent employment that is offered terminates the former employer's back-pay obligation." *Hazard v. NLRB*, 917 F.2d 736, 738 (2d Cir.1990) (remanding case to NLRB for specific findings to permit a determination of whether the point had been reached where plaintiff's insistence on remaining self-employed tolled backpay damages); *see also NLRB v. Arduini Mfg.*, 394 F.2d 420, 423 (1st Cir.1968) (holding that plaintiff's delay of several days in accepting a job offer demonstrated a lack of reasonable diligence in mitigating damages and tolled plaintiff's right to backpay). Whether an employee has rejected an offer of reinstatement is generally a question of fact for trial. *See Clarke*, 960 F.2d at 1151. This court finds a genuine issue of material fact as to whether plaintiff has rejected defendant's offer of reinstatement. Therefore, this court denies defendant's motion for summary judgment tolling defendant's backpay liability.

## CONCLUSION

Plaintiff has established issues of material fact as to (1) whether she was fired in a discriminatory manner, (2) whether she was reasonable in failing to notify her superiors of Rivera's alleged harassment, (3) whether Rivera continued to harass her after she terminated the sexual relationship and (4) whether plaintiff rejected defendant's offer of reinstatement.

For the reasons set forth above, defendant's motion for summary judgment is DENIED.

**SO ORDERED.**