960 F.2d 1146
 59 Fair Empl.Prac.Cas. (BNA) 1545,
58 Empl. Prac. Dec. P 41,420
Darren CLARKE, Plaintiff-Appellant-Cross-Appellee,
v.
Anthony M. FRANK, Postmaster General of the United States,
Defendant-Appellee-Cross-Appellant.
 Nos. 789, 881, Dockets 91-6221, 91-6255.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 14, 1992.
Decided April 6, 1992.
 
 Loren Baily, New York City, for plaintiff-appellant-cross-appellee.
 Paul Weinstein, Asst. U.S. Atty., Brooklyn, N.Y., (Andrew J. Maloney, U.S. Atty., of counsel) for defendant-appellee-cross-appellant.
 Before: TIMBERS, MESKILL and McLAUGHLIN, Circuit Judges.
 McLAUGHLIN, Circuit Judge:
 
 
 1
 Plaintiff ("Clarke") appeals from orders of the United States District Court for the Eastern District of New York, (Carol Bagley Amon and John L. Caden, Magistrate Judges ), awarding him $88,694.63 in back pay, plus prejudgment interest, for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., ("Title VII") committed by defendant United States Postal Service ("Postal Service"). Clarke also appeals from the district court's post-trial order granting him $24,000 in attorney's fees, rather than the $82,160 he had requested. The Postal Service cross-appeals from the district court's post-trial order denying its motion to strike the award of prejudgment interest, and also contests the decision to award attorney's fees. For the reasons set forth below, we affirm in part, reverse in part, and remand to the district court with instructions.
 
 BACKGROUND
 
 2
 The Postal Service hired Clarke as a "flexible mail carrier" in May, 1981. As with all new employees, the Postal Service placed Clarke on probation for 90 days, and directed a supervisor to evaluate Clarke's work performance at 30-day intervals.
 
 
 3
 Clarke received a satisfactory report on both his 30-day and 60-day evaluations, which were conducted by the same supervisor. A different supervisor, however, conducted the final evaluation. In his report, this supervisor characterized Clarke's performance as "unacceptable," and recommended that the Postal Service terminate Clarke's employment. The Postal Service fired Clarke on July 27, 1981.
 
 
 4
 Clarke filed a discrimination complaint with the Postal Service a month later, alleging that the decision to fire him was racially motivated. Clarke's complaint resulted in a four-year odyssey through the administrative thicket mandated in employment discrimination cases. Ultimately, the Equal Employment Opportunity Commission ("EEOC") issued an order in September 1985 requiring the Postal Service to reinstate Clarke, and to award him back pay for the four years. The EEOC did not calculate the amount of back pay actually due to Clarke, but rather remanded this matter to the Postal Service for determination.
 
 
 5
 The Postal Service wrote to Clarke on December 16, 1985, and offered him reinstatement to his mail carrier position effective January 18, 1986. As part of its efforts to calculate Clarke's back pay, the Postal Service also asked Clarke to submit documentation of his earnings from 1981 to 1985, since those earnings would be subtracted from what he otherwise would have earned as a mail carrier.
 
 
 6
 On January 15, 1986, Clarke sent a letter to the Postal Service declining the job offer. Instead, he asked the Postal Service to reinstate him in June 1986, because he had enrolled at Baruch College, and would finish his studies then. In response to the inquiry about his 1981-1985 earnings, Clarke wrote that he had worked between sixteen and twenty hours per week at various jobs since his termination from the Postal Service, and had earned nearly $16,000 during that time.
 
 
 7
 The Postal Service did not acknowledge Clarke's request for deferment of reinstatement; and Clarke did not pursue reinstatement after he graduated from Baruch. Soon after his graduation, however, Clarke contacted the Postal Service because he had not received any of his back pay award. A Postal Service spokesman told Clarke that his back pay award was still under consideration.
 
 
 8
 In November, 1987 (over a year after Clarke notified the Postal Service of its delay in processing his award), the Postal Service wrote to Clarke, and informed him that it would not award any back pay because he had not made "reasonable efforts" to obtain full-time employment. Clarke then filed the present lawsuit, seeking back pay, interest and attorney's fees.
 
 
 9
 The case was referred to then-Magistrate Judge Carol Bagley Amon for all purposes, pursuant to 28 U.S.C. § 636(c).[1] Clarke moved for summary judgment, arguing that the Postal Service was "collaterally estopped" from raising the defense that Clarke had not made "reasonable efforts" to obtain full-time employment, because it had not asserted that argument during the EEOC proceedings. The district court denied Clarke's motion, finding that the EEOC typically determines only whether an employer is liable under Title VII, and does not address the damages, including back pay, to which an aggrieved employee is entitled. Because the Postal Service's argument questioned only Clarke's right to back pay, the district court held that the Postal Service could raise this argument at trial.
 
 
 10
 Upon Magistrate Judge Amon's appointment as a District Judge in August, 1990, the case was reassigned to Magistrate Judge John L. Caden for trial. At trial, Clarke testified that, in addition to the employment that he had previously reported to the Postal Service, he had also worked twenty hours per week at the "Ferry Bank" restaurant between January, 1983 and November, 1985. When coupled with the employment already disclosed to the Postal Service, Clarke's hours at the Ferry Bank amounted to full-time employment during the 34 months he worked at that restaurant.
 
 
 11
 The district court found that Clarke's various sources of income demonstrated his willingness to work full-time, and, therefore, that the Postal Service had not proven that Clarke had failed to seek comparable full-time employment. The court further found that the Postal Service's December 16, 1985 reinstatement offer was unconditional, thereby tolling the Postal Service's liability for back pay as of that date. Accordingly, the court held that Clarke was entitled to backpay from July 27, 1981 (the date the Postal Service terminated his employment), to December 16, 1985 (the date of the Postal Service's reinstatement offer). The court awarded Clarke $96,941.63, representing the amount earned by a similarly situated white Postal Service employee during the back pay period, minus Clarke's earnings from his divers jobs during that period. The court also awarded prejudgment interest on the back pay award.
 
 
 12
 Clarke and the Postal Service then filed separate motions in the district court seeking to amend the judgment. In his motion, Clarke requested attorney's fees of $82,160, to compensate his attorney for the 410.8 hours she claimed to have worked on the case, at the rate of $200 per hour. The Postal Service's motion sought a recalculation of the back pay award, and reconsideration of the grant of prejudgment interest.
 
 
 13
 The district court awarded Clarke attorney's fees of $24,000, representing 120 hours that the court determined were reasonably devoted to the case, multiplied by $200 per hour.[2] After examining the Postal Service's evidence concerning Clarke's outside earnings, the district court reduced the back pay award to $88,694.63. Finally, the court denied the Postal Service's motion to strike the award of prejudgment interest.
 
 
 14
 Clarke now appeals from the district court's orders. First, he claims that the Postal Service should have been "collaterally estopped" from arguing at trial that Clarke had failed to seek full-time employment. Second, he asserts that the district court mistakenly tolled the Postal Service's back pay liability as of December 16, 1985. Finally, Clarke claims that the district court erred in awarding lesser attorney's fees than he had requested. The Postal Service cross-appeals, challenging the district court's awards of attorney's fees and pre-judgment interest.
 
 DISCUSSION
 
 15
 I. "Collateral Estoppel "
 
 
 16
 The record is clear that the EEOC considered only whether the Postal Service had violated Clarke's rights under Title VII. It did not pass on the amount of back pay due to Clarke, and did not ask the parties to submit any evidence on this issue. Nonetheless, Clarke argues that the district court should have applied the doctrine of "collateral estoppel" to bar the Postal Service from arguing at trial that Clarke had failed to mitigate his damages by not seeking full-time employment. We hold that the district court properly allowed the Postal Service to raise its mitigation argument at trial.
 
 
 17
 Under the doctrine of claim preclusion, a judgment is the "full measure of relief to be accorded between the same parties on the same 'claim' or 'cause of action.' " Kaspar Wire Works, Inc. v. Leco Engineering & Mach., Inc., 575 F.2d 530, 535 (5th Cir.1978), cited in Charles A. Wright et al., 18 Federal Practice & Procedure § 4402 at 7 (1981) [hereafter "Wright"]. Claim preclusion prevents a party from litigating any issue or defense that could have been raised or decided in a previous suit, even if the issue or defense was not actually raised or decided. See Murphy v. Gallagher, 761 F.2d 878, 879 (2d Cir.1985); see also Wright § 4414 at 109.
 
 
 18
 Collateral estoppel, or "issue preclusion," prevents a party from relitigating only those "issues actually adjudicated, and essential to the judgment, in a prior litigation ..." Kaspar Wire Works, 575 F.2d at 536 (emphasis added). Unlike claim preclusion, collateral estoppel does not prohibit a party from litigating issues that were never argued or decided in the prior proceeding. See Wright § 4416 at 136.
 
 
 19
 Here, the EEOC determined only that the Postal Service's termination of Clarke violated Title VII. It never addressed whether Clarke had mitigated his damages by attempting to obtain full-time employment. Because the EEOC did not pass on this issue, the doctrine of collateral estoppel obviously could not have barred the Postal Service from asserting its mitigation argument at trial.
 
 
 20
 Claim preclusion was similarly inapplicable, because the Postal Service did not make, and could not have been expected to make, the mitigation argument during the EEOC proceedings. After determining that an employer has violated Title VII, the EEOC does not ordinarily consider the amount of a back pay award. Rather, the EEOC's standard practice is to remand this question to the employer. Accord Quinones Candelario v. Postmaster General of U.S., 906 F.2d 798, 801 (1st Cir.1990) (The EEOC typically determines only whether employer is liable under Title VII, and is "not necessarily the appropriate forum for a precise determination of ... damages."), cert. denied sub nom., Candelario v. Frank, --- U.S. ----, 111 S.Ct. 1307, 113 L.Ed.2d 242 (1991). This case was no exception to the EEOC's general practice. Thus, the district court properly allowed the Postal Service to contest Clarke's entitlement to back pay at trial.
 
 
 21
 II. The Postal Service's Liability for Back Pay
 
 
 22
 When an employer has violated Title VII, a court may award back pay to make the employee whole for the injuries he has suffered. Albemarle Paper Co. v. Moody, 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280 (1975). Before doing the algebra, the court must first ascertain the time period of the employer's liability. An employee is generally entitled to back pay from the date of his wrongful termination to the date the discrimination is rectified. See EEOC v. Enterprise Ass'n Steamfitters Local No. 638 of U.A., 542 F.2d 579, 590 (2d Cir.1976), cert. denied sub nom., Rios v. Enterprise Ass'n Steamfitters Local No. 638 of U.A., 430 U.S. 911, 97 S.Ct. 1186, 51 L.Ed.2d 588 (1977). However, back pay will no longer accrue if the employer makes an unconditional offer to reinstate the employee, and the employee rejects the offer. See Ford Motor Co. v. EEOC, 458 U.S. 219, 241, 102 S.Ct. 3057, 3070, 73 L.Ed.2d 721 (1982). When that occurs, the employer's liability for back pay is tolled on the date the employee rejects the offer. Id. at 239, 241, 102 S.Ct. at 3069, 3070.
 
 
 23
 Whether the employer made an unconditional offer of reinstatement, and whether the employee rejected that offer, are questions of fact to be determined by the district court. See Pierce v. F.R. Tripler & Co., 955 F.2d 820, 830 (2d Cir.1992). We will reverse the district court only if its findings are clearly erroneous; that is, the district court's determination of the evidence need only be "plausible in light of the record viewed in its entirety." Anderson v. Bessemer City, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Applying this deferential standard to the present case, we hold that the district court's findings that (1) the Postal Service made an unconditional offer of reinstatement to Clarke, and (2) Clarke rejected that offer, are supported by the record.
 
 
 24
 We need only look at the Postal Service's December 16, 1985 letter to determine that Clarke was unconditionally offered reinstatement. The letter states "In compliance with the Equal Opportunity Commission's decision, you will be reinstated as a city carrier to the Long Island City Post Office, effective January 18, 1986...." It placed no qualifications on Clarke's reinstatement, aside from the Postal Service's standard prerequisites that Clarke pass a driver's test and a physical examination. Thus, the district court did not err in finding that the Postal Service unconditionally offered reinstatement to Clarke.
 
 
 25
 It is equally clear that Clarke rejected the Postal Service's offer. Clarke's January 15, 1986 letter states:
 
 
 26
 I am now faced with having to choose one of two prolific opportunities: 1) accepting the January 18, 1986 reinstatement or 2) completing my final semester at Baruch College....
 
 
 27
 My decision to continue with my studies is a very responsible one. I regret being in the position of not being able to work and go to school at this time.
 
 
 28
 Clarke's letter reflects his obvious intention to decline the Postal Service's offer of reinstatement. Thus, we hold that the district court did not abuse its discretion in finding that Clarke rejected the offer.
 
 
 29
 Inexplicably, the district court cut off Clarke's right to back pay as of December 16, 1985 (the date of the reinstatement offer), rather than January 15, 1986 (the date Clarke rejected the offer). This is squarely contrary to the Supreme Court's holding in Ford Motor Co. that back pay accrues until the date that an aggrieved employee rejects the employer's reinstatement offer. Thus, under Ford Motor Co., the Postal Service's back pay liability runs from July 27, 1981 (the date of Clarke's termination) to January 15, 1986 (the date Clarke rejected the Postal Service's reinstatement offer).
 
 
 30
 Accordingly, we do not disturb the district court's calculation of back pay from July 27, 1981 until December 16, 1985. We reverse the district court's decision to limit the Postal Service's back pay liability to December 16, 1985, and remand to the district court with instructions to determine the appropriate back pay due for the month between December 16, 1985 and January 15, 1986.
 
 III. Attorney's Fees
 A. Entitlement to Attorney's Fees
 
 31
 Absent a statute to the contrary, the parties to a lawsuit ordinarily pay their own attorney's fees. See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 561-62, 106 S.Ct. 3088, 3096-97, 92 L.Ed.2d 439 (1986). Thus, a federal court may not award attorney's fees unless Congress has specifically empowered the court to do so. See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 269, 95 S.Ct. 1612, 1627, 44 L.Ed.2d 141 (1975). Congress has provided such authority in Title VII cases: "In any action or proceeding under this title the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee...." 42 U.S.C. § 2000e-5(k). The Supreme Court has interpreted Section 2000e-5(k) to mandate attorney's fees to a prevailing plaintiff unless "special circumstances" would render such an award unjust. Moody, 422 U.S. at 415, 95 S.Ct. at 2370.
 
 
 32
 The Postal Service acknowledges that attorney's fees are normally awarded to plaintiffs who prevail on their Title VII claims. It also acknowledges that Clarke has "prevailed" for purposes of Title VII. The Postal Service argues, nonetheless, that "special circumstances" are present here because it would have awarded back pay readily if it had known before trial that Clarke worked at the Ferry Bank for twenty hours per week between 1983 and 1985, and therefore was actually employed full-time during that period. Although we cannot commend Clarke for his lack of candor, we need not determine whether his prevarications amount to "special circumstances." We conclude that the Postal Service's conduct at trial shows that it would not have paid Clarke even if it knew the full extent of his employment.
 
 
 33
 A victim of employment discrimination has the same duty to mitigate his damages as any victim of a tort or breach of contract. See Ford Motor Co., 458 U.S. at 231 & n. 15, 102 S.Ct. at 3065 & n. 15. This duty "requires the claimant to use reasonable diligence in finding other suitable employment." Id. at 231, 102 S.Ct. at 3065 (emphasis added). The claimant need not accept employment that is not comparable to his previous position; but if he accepts less prestigious work, his earnings from that job are subtracted from his back pay award. Id. at 231 & n. 14, 102 S.Ct. at 3065 & n. 14. The employer bears the burden of proving that suitable work existed, and that the employee did not make reasonable efforts to obtain it. E.g., Normand v. Research Institute of America, Inc., 927 F.2d 857, 865 (5th Cir.1991).
 
 
 34
 Here, the Postal Service charged in its opening statement that comparable work to Clarke's Postal Service job existed, and that Clarke had not made reasonable efforts to obtain such work:
 
 
 35
 The plaintiff never looked for work comparable to his work at the Postal Service, although work existed in the New York City area.
 
 
 36
 * * * * * *
 
 
 37
 The evidence will show he never looked for a job that had anything to do with sorting mail or delivering mail.
 
 
 38
 During the trial, the Postal Service offered the testimony of a Postal Service worker, and introduced copies of "Help Wanted" advertisements from the New York Times, in an attempt to prove that Clarke was qualified to sort and deliver mail, and that this type of work was available in the New York area.
 
 
 39
 We believe that the Postal Service's vigorous assertions that work comparable to Clarke's Postal Service job existed, and that Clarke did not pursue it, amply support the conclusion that the Postal Service would not have awarded back pay to Clarke even if it had known of his employment at the Ferry Bank. Clarke's responsibilities as a bookkeeper and host at the Ferry Bank were not comparable to his Postal Service duties as a mail carrier. And it was the Postal Service's steadfast position that comparable work was available, but that Clarke had failed to mitigate his damages by seeking it. We hold, therefore, that Clarke's failure to reveal his Ferry Bank employment prior to trial did not alter the Postal Service's position that Clarke never sought comparable work.[3] Accordingly, we affirm the district court's decision to award attorney's fees to Clarke.
 
 B. Amount of Attorney's Fees
 
 40
 The district awarded Clarke $24,000 in attorney's fees. This represented 120 hours that the district court considered reasonable for the case, multiplied by an hourly rate of $200 per hour. Clarke contests the district court's decision, arguing that his attorney actually worked 410.8 hours on the case, and thus deserved attorney's fees of $82,160. We disagree.
 
 
 41
 A district court determines the proper amount of an attorney's fees award by multiplying "all reasonable hours" expended by the prevailing party's attorney by a "reasonable hourly rate." Di Filippo v. Morizio, 759 F.2d 231, 234 (2d Cir.1985) (emphasis added). In calculating the number of "reasonable hours," the court looks to "its own familiarity with the case and its experience with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." Id. at 236. Because attorney's fees are dependent on the unique facts of each case, the resolution of this issue is committed to the discretion of the district court. See Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983).
 
 
 42
 We believe that the district court was well within its discretion in finding that this case required Clarke's attorney to reasonably expend 120 hours. This was not a complex case. Clarke's attorney took no depositions, and performed little discovery. The sole issue at trial was the amount of back pay. The trial lasted slightly more than one day. Clarke did not call any witnesses, and did not even testify. The case did not involve any novel areas of law. Clarke's post-trial motions were neither complicated nor abstruse. In short, the record supports the district court's ruling that Clarke requested excessive attorney's fees. Similarly, the district court did not abuse its discretion in holding that 120 hours were reasonably expended on the case. Thus, we affirm the district court's decision to award Clarke $24,000 in attorney's fees.
 
 IV. Prejudgment Interest
 
 43
 Title VII authorizes a district court to grant prejudgment interest on a back pay award. See Loeffler v. Frank, 486 U.S. 549, 557 & n. 5, 108 S.Ct. 1965, 1970 & n. 5, 100 L.Ed.2d 549 (1988) (citing cases). Prejudgment interest discourages an employer from attempting to "enjoy an interest-free loan for as long as [it can] delay paying out back wages." Donovan v. Sovereign Security, Ltd., 726 F.2d 55, 58 (2d Cir.1984). Thus, we have held that "it is ordinarily an abuse of discretion not to include pre-judgment interest in a back-pay award...." Id. (emphasis added) (prejudgment interest was a necessary component of a back pay award under the Fair Labor Standards Act); EEOC v. County of Erie, 751 F.2d 79, 81 (2nd Cir.1984) (prejudgment interest is an essential element of a back pay award under the Equal Pay Act).
 
 
 44
 The district court awarded Clarke prejudgment interest on the $88,694.63 back pay award from December 16, 1985 until May 22, 1991 (the date the court entered its judgment awarding Clarke back pay). The Postal Service argues that prejudgment interest is improper because it would have awarded back pay earlier if it had known the full extent of Clarke's employment prior to trial. As we have already stated, however, the Postal Service's conduct at trial contradicts this argument. Thus, for the same reasons that we hold that Clarke is entitled to attorney's fees, we conclude that the district court properly exercised its discretion in awarding prejudgment interest to Clarke.
 
 CONCLUSION
 
 45
 The district court did not err in permitting the Postal Service to argue at trial that Clarke had failed to mitigate his damages. The district court correctly found that the Postal Service unconditionally offered reinstatement to Clarke, and that Clarke rejected the offer. Because the district erred in limiting the Postal Service's back pay liability to the date it made the reinstatement offer, we remand to the district court to determine the amount of back pay from the date of the offer to the date Clarke rejected the offer. Attorney's fees and prejudgment interest are warranted because the Postal Service would have gone to trial even if had known the full extent of Clarke's post-termination employment prior to trial. Finally, the district court did not abuse its discretion in awarding Clarke an amount of attorney's fees that jibed with the district court's determination of the reasonable number of hours worked on the case.
 
 
 46
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 MESKILL, Circuit Judge, dissenting in part:
 
 47
 I agree with the majority's disposition of the merits of this case but believe that a remand to the district court for further factual determinations is necessary before attorney's fees and prejudgment interest may appropriately be awarded. I believe that the majority engages in impermissible appellate factfinding with regard to what the Postal Service would have done had Clarke been truthful regarding his employment history.
 
 
 48
 A prevailing Title VII plaintiff "ordinarily is to be awarded attorney's fees in all but special circumstances." Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 417, 98 S.Ct. 694, 698, 54 L.Ed.2d 648 (1978) (footnote omitted). Such "special circumstances" may well be present in this case. Clarke concealed his employment at the Ferry Bank restaurant from the Postal Service when he was asked to report all his interim employment. He assiduously avoided mentioning that employment during his deposition. When Clarke finally did reveal the employment, burying it in a pretrial memorandum, the number of hours worked was understated by half. At trial, in the face of losing a recovery for failure to mitigate damages, Clarke testified that he had worked enough hours at Ferry Bank, when combined with his other work, to constitute full-time employment. The motivation for this concealment most likely was twofold: to defraud the Postal Service by increasing the amount of back pay for which it was liable and to defraud the Internal Revenue Service by concealing a source of income. In short, Clarke concealed his work record when he thought that doing so would help him. He only disclosed the truth when he realized that the truth actually would help him.
 
 
 49
 The Postal Service claims on appeal, as it suggested to the district court below, that the instant litigation would not have occurred absent Clarke's concealment of his employment history. If that is the case, it would be unjust to award Clarke attorney's fees. An award of attorney's fees under Title VII is designed to compensate parties who must seek redress through the courts in order to obtain that to which they are entitled. Where litigation is not necessary to vindicate an individual's rights but is caused solely by the wrongful concealment of information, an award of attorney's fees is inappropriate.
 
 
 50
 The majority concludes that "Clarke's failure to reveal his Ferry Bank employment prior to trial did not alter the Postal Service's position that Clarke never sought comparable work." Maj.Op. at III-A. How do they know that? The district court made no finding on the issue. It did not even hear any evidence as to the Postal Service's motivation in refusing Clarke's back pay claim. We are not the proper body to make such a determination. Appellate courts are ill equipped to make factual determinations such as that made by the majority today. We do not call or examine witnesses and we cannot expand the record before us if it is inadequate. Where the district court has not made the necessary findings the proper course is to remand the matter to the district court. See, e.g., Icicle Seafoods v. Worthington, 475 U.S. 709, 714, 106 S.Ct. 1527, 1530, 89 L.Ed.2d 739 (1986) ("If the Court of Appeals believed that the District Court had failed to make findings of fact essential to a proper resolution of the legal question, it should have remanded to the District Court to make those findings."); see also 5A J. Moore & J. Lucas, Moore's Federal Practice § 52.06 (1982) (collecting cases).
 
 
 51
 In asserting that there is no need for an evidentiary hearing to determine the Postal Service's pretrial motivation for its refusal to award back pay the majority states: "Such a hearing would attempt to ascertain the Postal Service's pre-trial motivation from its post-trial representations." Maj.Op. n. 3. This is not necessarily the case. The Postal Service might provide evidence that predated the trial such as internal memoranda regarding Clarke's case, records of decisions to proceed or not proceed in analogous cases or general written directives regarding when to settle a case and when to take it to trial.
 
 
 52
 The majority also states that "the Postal Service's post-trial protestations cannot outweigh its assertions at trial that Clarke did not deserve back pay because he had failed to seek comparable employment." Id. The Postal Service's "assertions at trial" are not as unambiguous as the majority presents them. The majority selectively quotes from the Postal Service's opening statement. Much of the omitted language is highly relevant:
 
 
 53
 What the evidence will show is that after his termination from the Post Office where he worked for a few months as a 19 year old he did not work full time again until he received a Masters Degree from New York University, the better part of a decade later.
 
 
 54
 The plaintiff never looked for work comparable to his work at the Postal Service, although work existed in the New York City area. He made no reasonable efforts to obtain full time employment at all, let alone comparable work, being sorting mail and delivering mail.
 
 
 55
 The evidence will show he never looked for a job that had anything to do with sorting mail or delivering mail.
 
 
 56
 One of our witnesses will be an economist who will present a statistical analysis showing that it's virtually impossible that a person looking for work in the New York City area of this plaintiff's asian [sic] work would be out of work for two years, let alone for seven, and that's full time work.
 
 
 57
 In conclusion, our position is that this plaintiff has made no reasonable efforts to find any kind of full time employment, let alone, substantially similar employment. He has not mitigated his damages. He went to school full time for seven years, and that the Post Office should not pay him full salary while he was a full time student.
 
 
 58
 (emphasis added). It is clear from this more complete excerpt of the Postal Service's opening statement that the Postal Service's argument had two elements: (1) Clarke did not seek comparable work, and (2) Clarke did not seek any full time work.
 
 
 59
 The Postal Service's position at trial is not so unambiguous or so dispositive as to preclude a finding that the Postal Service would have settled the case prior to trial had it known the facts. A finding to that effect by a district court, even on the sparse record before us, would not be clearly erroneous.
 
 
 60
 Accordingly, I respectfully dissent from that part of the majority opinion that affirms the award of attorney's fees and prejudgment interest and would remand the matter to the district court for further factual determinations. I concur in all other aspects of the majority opinion.
 
 
 
 [1]
 28 U.S.C. § 636(c)(1) provides, in pertinent part, "Upon the consent of the parties, a full-time United States Magistrate [Judge] ... may conduct any or all proceedings in a jury or non-jury civil matter...." In such situations, a non-prevailing party "may appeal directly to the appropriate United States court of appeals in the same manner as an appeal from any other judgment of a district court." Id. § 636(c)(3)
 
 
 [2]
 The Postal Service conceded that $200 was a reasonable hourly rate
 
 
 [3]
 We see no need to require an evidentiary hearing to determine the Postal Service's pre-trial motivation for its refusal to award back pay. Such a hearing would attempt to ascertain the Postal Service's pre-trial motivation from its post-trial representations. This strikes us as a futile exercise, since the Postal Service's post-trial protestations cannot outweigh its assertions at trial that Clarke did not deserve back pay because he had failed to seek comparable employment