**Carmen Guaus MENDEZ, Appellee,**

v.

**TEACHERS INSURANCE AND ANNUITY ASSOCIATION AND COLLEGE RETIREMENT EQUITIES FUND, Appellant,**

**Rose Diaz Cordes, as Executrix of the Estate of Leocadio V. Diaz, deceased, Counterclaim–Appellee.**

Nos. 545, 647, Dockets 92–7711, 92–7747.

United States Court of Appeals, Second Circuit.

Argued Nov. 25, 1992.

Decided Dec. 28, 1992.

Felicia M. Varlese, New York City (William E. Kelly, and Lane & Mittendorf, on the brief), for appellant.

Joel T. Camche, New York City (Hallinan & Camche, on the brief), for appellee.

Before: TIMBERS, MINER and McLAUGHLIN, Circuit Judges.

TIMBERS, Circuit Judge:

Appellant Teachers Insurance and Annuity Association and College Retirement Equities Fund (TIAA–CREF) appeals from so much of a judgment entered in the Southern District of New York, Robert P. Patterson, Jr., *District Judge*, 789 F.Supp. 139, that denied its motions for discharge from further liability on annuity insurance contracts and for attorney's fees, and granting attorney's fees, costs and disbursements to appellee Carmen Mendez. Mendez cross-appeals from that portion of the judgment that denied her prejudgment interest on the funds from June 21, 1990.

On appeal, TIAA–CREF challenges the judgment, claiming that it did not delay unreasonably in commencing an interpleader action, and therefore discharge from further liability on the insurance contracts was warranted. TIAA–CREF also claims that the award of attorney's fees, costs and disbursements to Mendez was improper. TIAA–CREF further claims that, even if the award of attorney's fees, costs and disbursements was proper, the award was excessive and should be reduced. Finally, TIAA–CREF claims that it should have been awarded attorney's fees from the interpleader fund. In her cross-appeal, Mendez claims that she is entitled to prejudgment interest on the awarded funds because TIAA–CREF unreasonably deprived her of annuity insurance proceeds to which she was entitled.

We reject all of TIAA–CREF's claims on appeal. We also reject Mendez' cross-claim. We affirm the judgment of the district court.

## I.

We summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.

In 1962, TIAA–CREF issued retirement annuity contracts which provided pre-retirement death benefit coverage to Leocadio V. Diaz. Diaz died on December 25, 1989. In February 1990, responding to TIAA–CREF's request, the executrix of Diaz' estate, Rose Diaz Cordes, verified that Carmen Guaus Mendez was Diaz' surviving spouse. By a letter dated June 25, 1990, TIAA–CREF informed Mendez of the retirement annuity contracts. Under the Employee Retirement Income Security Act of 1974 (ERISA), upon the death of a vested participant, a surviving spouse is entitled to not less than fifty percent of the amount of the annuity which is payable during the joint lives of the participant and spouse. 29 U.S.C. §§ 1055(a)(1) & (d) (1988). In August 1990, Mendez promptly responded to TIAA–CREF's letter, claiming that, as Diaz' surviving spouse, she was entitled to fifty percent of the $410,544.00 annuity balance.

By a letter dated August 17, 1990, Executrix Cordes opposed the distribution of proceeds to Mendez. She asserted that Mendez had abandoned Diaz. Diaz therefore did not intend that Mendez should receive any benefits from his estate, including the annuity insurance proceeds. Under applicable regulatory law, spousal benefits

accruing under ERISA may be waived, without the spouse's consent, only if: (1) the participant is "legally separated," or (2) the participant "has been abandoned (within the meaning of local law) *and* the participant has a court order to such effect." 26 C.F.R. § 1.401(a)–20, A–27 (1991) (*emphasis added*). By a letter dated January 10, 1991, TIAA–CREF informed Mendez of the estate's adverse claim, stating that it would deposit the funds in the district court if the claimants could not settle the matter.

TIAA–CREF received a subsequent letter from Executrix Cordes, dated January 29, 1991, containing a memorandum of law in support of the estate's position that Mendez was not entitled to the proceeds. The memorandum cited decisions of various state courts in support of its contention that Mendez had abandoned Diaz. The estate, however, submitted no proof that a court order of abandonment had been entered in any jurisdiction. In fact, at no time during the instant litigation did the estate claim that such a court order had been obtained by Diaz.

On June 18, 1991, Mendez commenced an action in New York County Supreme Court to recover the proceeds of the annuity contracts. TIAA–CREF removed the action to the Southern District of New York pursuant to 28 U.S.C. § 1441(b) (1988). Thereafter, TIAA–CREF counterclaimed against Mendez and the estate in an interpleader action. Subsequently, it deposited the disputed sum in the registry of the Southern District.

TIAA–CREF then moved, pursuant to 28 U.S.C. § 2361 (1988), to be discharged from liability to adverse claimants. Executrix Cordes did not oppose this motion. Subsequently, she abandoned the estate's claim against Mendez. TIAA–CREF's motion for discharge was denied during oral argument in the district court by an order dated December 18, 1991 because counsel for TIAA–CREF "were unable to confirm that the proceeds of the annuities had not been depleted by more than one half of the corpus."

TIAA–CREF moved for reargument of the December 18, 1991 order, maintaining that the court overlooked the controlling law of interpleader in denying its motion for discharge. It also requested an award of attorney's fees from the interpleader fund. At the same time, Mendez moved for summary judgment dismissing TIAA–CREF's counterclaim in interpleader and seeking a judgment in her favor, together with attorney's fees and costs, pursuant to 29 U.S.C. § 1132(g)(1) (1988). By an order dated April 13, 1992, the court granted Mendez' motion for summary judgment and denied TIAA–CREF's motions for reargument and attorney's fees. The court concluded that federal and regulatory law clearly entitled Mendez to the proceeds and that TIAA–CREF, a "sophisticated party" in the law of ERISA, should have realized that a court order of abandonment was required to terminate Mendez' rights to the proceeds. Thereafter, on April 29, 1992, a judgment was entered in favor of Mendez in the amount of $205,277.00, with interest from June 21, 1990, together with attorney's fees, costs and disbursements in the amount of $20,190.

TIAA–CREF moved for reargument of the April 13, 1992 order, asserting that the court improperly denied its motions for discharge and attorney's fees. It also moved, pursuant to Fed.R.Civ.P. 59(a) and 60(a), for an order amending the April 29, 1992 judgment to correct a clerical mistake in the principal award and to reduce the award of attorney's fees, costs and disbursements to Mendez.

By an order dated June 3, 1992, the court (1) denied TIAA–CREF's motion for reargument of the discharge issue based on its "unreasonable delay" in interpleading and depositing funds to which Mendez was plainly entitled, (2) amended the principal amount of Mendez' award from $205,277.00 to $205,949.89, and (3) held that Mendez was not entitled to additional interest on the principal amount, rescinding the prejudgment interest originally awarded in its April 29, 1992 judgment. The court adhered to its original award to Mendez of attorney's fees, costs and disbursements in the amount of $20,190.

On June 15, 1992, the court entered a judgment finally adjudicating all issues in the instant action. TIAA–CREF now appeals from that judgment. TIAA–CREF contends that the court erroneously denied its motion to be discharged from liability and its request for attorney's fees. It further contends that the award of attorney's fees, costs and disbursements to Mendez was improperly granted, or, in the alternative, that the award should be reduced. Mendez appeals from that portion of the judgment that denied her prejudgment interest from June 21, 1990.

## II.

### (A) *Discharge Under 28 U.S.C. § 2361*

We turn first to TIAA–CREF's principal contention that the district court improperly denied its motion for discharge from further liability to claimants pursuant to 28 U.S.C. § 2361.

■ Section 2361 authorizes a district court to discharge the stakeholder in any civil interpleader action from further liability to claimants. Before discharging a stakeholder under § 2361, the court must first determine whether the requirements of 28 U.S.C. § 1335 (1988) have been met. *New York Life Ins. Co. v. Connecticut Dev. Auth.*, 700 F.2d 91, 95 (2 Cir.1983). There must be a fund greater than $500; adverse claimants of diverse citizenship; a deposit of the fund in court; and a disinterested stakeholder. Even where, as here, the stakeholder has met the requirements of § 1335, discharge under § 2361 may be "delayed or denied if there are serious charges that the stakeholder commenced the action in bad faith." *New York Life Ins. Co., supra,* 700 F.2d at 96.

■ TIAA–CREF contends that the interpleader action was timely commenced and therefore not in bad faith, in view of the conflicting claims against the pension proceeds. Counsel for TIAA–CREF asserted at oral argument before us that a "solid dispute" had arisen in January 1990 between the Diaz estate and the insured's surviving spouse, Carmen Mendez, as to whether Mendez had abandoned Diaz within the meaning of local law.

TIAA–CREF further asserted that, as far as it knew, the claimants were attempting to settle the matter during the first few months of 1990. TIAA–CREF stated that accordingly it reasonably awaited the outcome of settlement negotiations before commencing the instant interpleader action in July 1991. Therefore, so TIAA–CREF's argument goes, the district court, in its order dated June 3, 1992, erred in holding that the interpleader action was unreasonably delayed, and in improperly denying its motion for discharge from liability on that ground.

TIAA–CREF's argument is disingenuous. As we observed at oral argument, "Where there's smoke, there's fire." The facts in the instant case began to smoulder in August 1990, when appellant first became aware of a potential conflict of claims between Mendez and the estate. In a letter to TIAA–CREF dated August 17, 1990, Executrix Cordes opposed distribution of the annuity contract proceeds, claiming that, according to the terms of his will, Diaz had not intended to distribute the retirement benefits to Mendez.

The real fire began in late January 1991 when the estate submitted to TIAA–CREF a memorandum of law in support of its position that, based on her alleged abandonment of Diaz, Mendez was not entitled to fifty percent of the retirement benefit proceeds. This memorandum, which chiefly cited various state law decisions as to the legal definition of abandonment, was not accompanied by a court order of abandonment. In fact, the estate never suggested that there was a court order of abandonment.

TIAA–CREF conceded at oral argument before us and in its briefs that, under the relevant Treasury Regulation, a non-consensual waiver of spousal benefits accruing under ERISA occurs only if: (1) the participant is legally separated; or (2) the participant "has been abandoned (within the meaning of local law) *and* the participant has a court order to such effect." 26 C.F.R. § 1.401(a)–20, A–27 (1991) (*empha-*

*sis added* ). Since nothing in the record indicates that the estate ever claimed that Diaz and Mendez had been legally separated, only a showing of legal abandonment, coupled with a court order to that effect, would have presented a colorable claim in the instant case. Without a court order of abandonment, Mendez plainly was entitled to the proceeds under ERISA and the Treasury Regulation.

Despite the estate's obvious inability to produce a court order of abandonment, TIAA–CREF continued to encourage the parties to settle the so-called dispute as late as April 1991. In a letter to the estate, dated April 4, 1991, TIAA–CREF flatly admitted that it did "not have a court pronouncement that such an abandonment took place." In the next paragraph, TIAA–CREF nonetheless urged the estate to contact Mendez' attorney "to try and resolve this matter."

Clearly, there was no matter to resolve. As the district court held, TIAA–CREF is a "sophisticated party ... with substantial experience in the area of ERISA law." *Mendez v. Teachers Ins. and Annuity Ass'n*, 789 F.Supp. 139, 141 (S.D.N.Y.1992). We agree. In our view, TIAA–CREF should have made more substantial efforts to verify whether a court order had been entered. TIAA–CREF conceded at oral argument before us that it did not make such efforts. Instead, it chose to rely solely on the estate's unsupported allegations of abandonment as its justification for withholding the pension funds.

As a result of TIAA–CREF's inaction, Mendez was compelled to commence an action on June 18, 1991 to recover pension proceeds to which she plainly was entitled. Diaz, by this time, had been deceased nearly one and a half years. Only after Mendez commenced the instant action did TIAA–CREF counterclaim in interpleader. This occurred in July 1991, several months after the estate's hollow claim was raised. The funds finally were deposited in the registry of the court on August 1, 1991.

In our view, the interpleader action came too late to douse the fire that, as TIAA–CREF's counsel conceded at oral argument, had erupted "four or five months" earlier when it became clear that there was no order of abandonment. In view of Mendez' plain entitlement to the proceeds, TIAA–CREF's delay in commencing an interpleader action clearly was unreasonable and impliedly was commenced in bad faith. TIAA–CREF has given us no reason for concluding that the district court's decision denying TIAA–CREF's motion for discharge was an abuse of discretion. We hold that there was none.

*(B) Attorney's Fees*

■ TIAA–CREF contends that the district court erred in awarding Mendez attorney's fees, costs and disbursements. TIAA–CREF also contends, conversely, that the court erred in denying its request for attorney's fees. It is within the discretion of the court to award attorney's fees "to either party" in an ERISA action. 29 U.S.C. § 1132(g)(1) (1988). The decision whether to award attorney's fees is based on five factors:

> "(1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants."

*Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 871 (2 Cir. 1987).

■ In a well-reasoned opinion, the district court applied the five-factor test set forth in *Chambless* in granting Mendez' motion for attorney's fees, costs and disbursements. *Mendez, supra*, 789 F.Supp. at 140–41. TIAA–CREF contends that, since none of the *Chambless* factors weighs in Mendez' favor, except the factor relating to TIAA–CREF's financial status, the court improperly granted her motion.

Analyzing Mendez' application in light of the remaining four *Chambless* factors, we are persuaded that the district court did not abuse its discretion in its award to her.

Since we have held that TIAA–CREF acted in bad faith in failing to timely interplead the funds, the first *Chambless* factor clearly weighs in Mendez' favor. Similarly, with respect to the fourth factor, our decision also makes clear that Mendez plainly was entitled to recover the annuity insurance proceeds. The relative merits of the parties' positions favor Mendez. In examining the third factor, we agree with the district court that an award of fees in the instant case will encourage ERISA fiduciaries to act in a timely fashion when faced with frivolous claims against pension proceeds.

The fifth *Chambless* factor—whether an action confers a common benefit on a group of pension plan participants—was not satisfied here. As the district court aptly observed, however, failure to satisfy this factor need not preclude an award of attorney's fees. *Ford v. New York Central Teamsters Pension Fund*, 642 F.2d 664, 665 (2 Cir.1981) (per curiam) (Under ERISA, " 'the failure of plaintiffs' action to confer a common benefit on a group of pension plan participants does not bar their recovery of attorney's fees.' ") (quoting *Ford v. New York Central Teamsters Pension Fund*, 506 F.Supp. 180, 183 (W.D.N.Y. 1980)). Since we believe that the district court did not abuse its discretion under § 1132(g)(1) in awarding attorney's fees, costs and disbursements to Mendez, we affirm the award.

■ Without revisiting the *Chambless* analysis in the context of TIAA–CREF's request for attorney's fees, we conclude that an award of such fees to a stakeholder in the instant action would be improper. TIAA–CREF, a knowledgeable insurer, failed to exercise sufficient diligence in investigating the merits of the estate's claim, thereby causing substantial unnecessary litigation. It cannot be said that the district court abused its discretion under § 1132(g)(1) in denying an award to TIAA–CREF. We so hold.

(C) *Amount of Award*

■ TIAA–CREF asserts that, even if an award of attorney's fees, costs and disbursements was proper, the amount of the award should be reduced. The calculation of attorney's fees in an ERISA action will not be disturbed absent an abuse of discretion. *Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053, 1058 (2 Cir.1989), *cert. denied*, 110 S.Ct. 2587 (1990). In the instant case, the district court awarded Mendez $20,190 in attorney's fees. This amount reflected 77 billable hours, the amount of time the court found reasonable, multiplied by an hourly rate of $260 per hour, plus costs and disbursements. *Clarke v. Frank*, 960 F.2d 1146, 1153 (2 Cir.1992) ("A district court determines the proper amount of an attorney's fees award by multiplying 'all *reasonable* hours' expended by the prevailing party's attorney by a 'reasonable hourly rate.' ") (quoting *DiFilippo v. Morizio*, 759 F.2d 231, 234 (2 Cir.1985)).

TIAA–CREF challenges this amount, asserting that the hourly rate is excessive and inconsistent with rates prevailing in the community. We hold this position to be untenable, especially in view of the fact that TIAA–CREF's attorneys have billed their services at approximately the same rate.

TIAA–CREF also asserts that the district court abused its discretion in failing to scrutinize Mendez' fee application. It claims that Mendez' attorney undertook legal services that were unnecessary and redundant, and therefore a reduction in the amount of hours is warranted. After reviewing Mendez' fee application, however, we are persuaded that the district court did not abuse its discretion in approving the reasonable amount proposed in Mendez' fee application. *Clarke, supra,* 960 F.2d at 1153 ("Because attorney's fees are dependent on the unique facts of each case, the resolution of this issue is committed to the discretion of the district court."). We hold that the district court properly awarded Mendez $20,190 in attorney's fees, costs and disbursements.

(D) *Prejudgment Interest*

■ We turn finally to Mendez' cross-claim for prejudgment interest on the

awarded funds. On June 15, 1992, the court entered an amended judgment that excluded prejudgment interest previously awarded in its April 29, 1992 judgment. Mendez contends that, in view of her plain entitlement to funds wrongfully withheld by TIAA–CREF, prejudgment interest was warranted as a matter of law.

While we have held that an award of prejudgment interest is appropriate in cases arising under ERISA, *Katsaros v. Cody*, 744 F.2d 270, 281 (2 Cir.), *cert. denied*, 469 U.S. 1076 (1984), it is not axiomatic that such interest should be awarded simply because, as here, the prevailing party has demonstrated entitlement to the funds. Rather, prejudgment interest is a discretionary matter for the court and should be awarded only in cases where such an award is "fair, equitable and necessary to compensate the wronged party fully." *Wickham Contracting v. Local Union No. 3, IBEW*, 955 F.2d 831, 835 (2 Cir.), *cert. denied*, 113 S.Ct. 394 (1992). An award of prejudgment interest, moreover, must not result in over-compensation of the party to whom judgment has been awarded. *Id.* at 834.

Mendez also contends that an award of prejudgment interest is necessary to ensure her full compensation. She asserts that, during the time the annuity proceeds were in TIAA–CREF's possession, she was deprived of the investment value of the funds. The record shows, however, that interest to the credit of Mendez was accruing on the annuity proceeds as a result of continuous investment earnings from the time of Diaz' death on December 25, 1989 until the funds were deposited in the registry of the court on August 1, 1991. Interest already had been included in the $205,-949.89 deposited with the clerk of the court on that date. In light of this, we are not persuaded that Mendez was inadequately compensated by the district court's judgment of June 15, 1992.

Moreover, funds on deposit with the clerk of the court do not earn interest without a court order to that effect. Local Civil Rule 8(c). The record indicates that Mendez did not seek such an order. Ac-cordingly, since she failed to obtain an order providing for such interest, Mendez cannot reasonably claim entitlement to prejudgment interest on the annuity proceeds after they were deposited in the court on August 1, 1991.

For the reasons set forth above, we reject Mendez' contention that the district court abused its discretion in denying her prejudgment interest on the awarded funds. We hold that the district court properly denied Mendez' claim for prejudgment interest.

### III.

To summarize:

We hold that the district court, pursuant to 28 U.S.C. § 2361, properly denied TIAA–CREF's motion for discharge because of TIAA–CREF's unreasonable delay in commencing an interpleader action. Moreover, we hold that the court did not abuse its discretion in awarding reasonable attorney's fees, costs and disbursements to Mendez and in denying fees to TIAA–CREF. We reject Mendez' cross-claim for prejudgment interest since the court's judgment included adequate interest on the insurance proceeds.

Affirmed.