11-271(L)
G & T Terminal Packaging Co., Inc. v. NLRB

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, in the City of New York, on the 24th day of January, two thousand twelve.

Present:
      ROBERT A. KATZMANN,
      GERARD E. LYNCH,
            *Circuit Judges*,
      LEWIS A. KAPLAN,
            *District Judge*.[*]

---

G & T TERMINAL PACKAGING CO. INC., MR. SPROUT, INC., TRAY-WRAP, INC., CHAIN TRUCKING INC., a single employer, G & T TERMINAL PACKAGING CO., and its alter ego SLOW PACK, INC.,

      *Petitioners-Cross-Respondents*,

         v.                        Nos. 11-271-ag(L);
                                       11-637-ag(XAP)

NATIONAL LABOR RELATIONS BOARD,

      *Respondent-Cross-Petitioner*.

---

For Petitioners-Cross-Respondents:     L<small>INDA</small> S<small>TRUMPF</small>, New Canaan, CT.

---

[*] The Honorable Lewis A. Kaplan, United States District Court for the Southern District of New York, sitting by designation.

For Respondent-Cross-Petitioner:     JEFFREY W. BURRITT (Ruth E. Burdick, Supervisory
                                     Attorney; Lafe E. Solomon, Acting General Counsel;
                                     Celeste J. Mattina, Acting Deputy General Counsel;
                                     John H. Ferguson, Associate General Counsel; Linda
                                     Dreeben, Deputy Associate General Counsel, *on the
                                     brief*), National Labor Relations Board, Washington,
                                     D.C.

Petition for review and cross-petition for enforcement of a decision and order of the National Labor Relations Board.

**ON CONSIDERATION WHEREOF**, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the petition for review is **DENIED** and the cross-petition for enforcement is **GRANTED**.

This unfair labor practice case is before this Court for the second time on the petition of G & T Terminal Packaging Co., Inc., et al. ("the Company")[1] to review, and on the cross-petition of the National Labor Relations Board ("the Board") to enforce, the Board's Second Supplemental Decision and Order in *G & T Terminal Packaging Co.*, 356 NLRB No. 41, 2010 WL 4929681 (Nov. 30, 2010) (the "Supplemental Order"). When this case was first before this Court, we upheld the Board's finding that the Company had violated various provisions of the National Labor Relations Act ("the Act"). *See NLRB v. G&T Terminal Packaging Co.*, 246 F.3d 103 (2d Cir. 2001), *reh'g granted* 19 F. App'x 16 (2d Cir. 2001). We declined to enforce, however, three of the Board's affirmative remedies, and consequently remanded the case to the Board for further consideration of several remedial matters. Following the Board's petition for a

---

[1]The Board previously determined that G & T Terminal Packaging Co., Inc., Mr. Sprout, Inc., Tray-Wrap, Inc., and Chain Trucking constitute a single employer, and that Slow Pack, Inc., is the alter ego of G & T Terminal Packaging Co., Inc. *See G & T Terminal Packaging, Co.*, 326 NLRB 114, 114 n.1, 119, 123 (1998).

rehearing, we again remanded the case to the Board for it to consider whether the two modifications recommended in the Board's rehearing petition were both feasible and equitable. *NLRB v. G&T Terminal Packaging Co.*, 19 F. App'x 16, 17 (2d Cir. 2001). After answering these questions in the affirmative in an unpublished Decision and Order in 2004, the Board remanded to the administrative law judge (ALJ) for further development of the record.

In its November 30, 2010 Supplemental Order, the Board affirmed in part and modified in part the ALJ's decision and determined, among other things, the amount of backpay owed to the discriminatees and the amount of reimbursement owed several discriminatees for dental and optical expenses. Specifically, the Board found that the Company would have lawfully shut down its potato-packaging machine no earlier than January 31, 1996, and that all discriminatees were entitled to backpay from April 20, 1995 through that date. The Board further determined that because the Company resumed packaging some potatoes by hand in May 1995, the discriminatees who were qualified to package tomatoes, sprouts, or potatoes by hand should have been recalled and were entitled to backpay from that date until a valid reinstatement offer was made. The Company mailed offers of reinstatement to all of the discriminatees except Maria Garcia shortly after the ALJ issued his September 9, 1996 decision, and the General Counsel therefore cut off the backpay period as of October 1, 1996. Having established these parameters, the Board evaluated the Company's mitigation evidence and found that the Company, with a few exceptions, had not met its burden of establishing that any of the discriminatees had failed to mitigate his or her losses. The Board also ordered the Company to reimburse several discriminatees for their out-of-pocket dental and optical expenses.

The Company now raises a number of objections to enforcement of the Board's Supplemental Order, including, *inter alia*, that the Board that erred in finding (a) that the

3

Company failed to prove that its potato-packaging machine would have been dismantled for valid economic reasons earlier than January 31, 1996; (b) that all of the discriminatees were qualified to perform other packing work for the Company; and (c) that the discriminatees made reasonable efforts to find interim work. The Company also argues that the Board's findings regarding dental and optical expenses are not substantiated by the record; that the Board failed to follow the correct procedure set forth in its Manual regarding contact with claimants; and that the remedies ordered by the Board are not equitable or feasible at this late date. We assume the parties' familiarity with the remaining facts and procedural history of this case, which we discuss below only as necessary to explain our decision.

We first consider the Company's various objections to the Board's determination of the amount of backpay owed the discriminatees. Under the Act, an award of reinstatement with backpay is the normal remedy awarded to victims of discrimination, *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 194 (1941), and a finding that an employer took a discriminatory employment action on the basis of an employee's protected activities "is presumptive proof that some back pay is owed," *NLRB v. Mastro Plastics Corp.*, 354 F.2d 170, 178 (2d Cir. 1965). "The gross backpay due an employee who has been wrongfully discriminated against is the amount that will restore the situation as nearly as possible, to that which would have obtained but for the illegal discrimination." *NLRB v. Ferguson Elec. Co.*, 242 F.3d 426, 431 (2d Cir. 2001) (internal quotation marks omitted). To restore the status quo, the "wrongfully discharged employee is entitled to the difference between what he would have earned but for the wrongful discharge and his actual interim earnings from the time of discharge until he is offered reinstatement." *Heinrich Motors, Inc. v. NLRB*, 403 F.2d 145, 148 (2d Cir. 1968).

4

The Board's discretion in formulating remedies, including backpay, is broad and subject to limited judicial review. *NLRB v. J. H. Rutter-Rex Mfg. Co.*, 396 U.S. 258, 262-63 (1969). "In fashioning its remedies under the broad provisions of § 10(c) of the Act (29 U.S.C. § 160(c)), the Board draws on a fund of knowledge and expertise all its own, and its choice of remedy must therefore be given special respect by reviewing courts." *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 613 n.32 (1969); *accord TNT USA Inc. v. NLRB*, 208 F.3d 362, 367 (2d Cir. 2000). Accordingly, the Board's order of restoration by way of backpay "should stand unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act." *NLRB v. Fugazy Cont'l Corp.*, 817 F.2d 979, 982 (2d Cir. 1987) (internal quotation mark omitted). It is well settled that a party challenging the Board's remedial choice has the burden of proving that the Board abused its discretion in making that determination. *See Mastro Plastics*, 354 F.2d at 174, 176-77.

The Company first argues that the Board erred in finding that the Company's potato-packaging machine would have been dismantled for valid economic reasons no earlier than January 31, 1996. The Company bears the burden of proving that the machine would have been dismantled at a date earlier than that adopted by the ALJ and the Board, and here the Company relies largely on the testimony of the Company's president, Anthony Spinale, who asserted that he would have closed the potato-packing operation by the end of April 1995 for valid economic reasons. This proof is insufficient, however, because the ALJ found Spinale's testimony not credible. An ALJ's credibility determination "will not be overturned unless [it is] hopelessly incredible or . . . flatly contradict[s] either the law of nature or undisputed documentary testimony," *NLRB v. Am. Geri-Care, Inc.*, 697 F.2d 56, 60 (2d Cir. 1982) (internal quotation marks omitted), and here the Company fails to present any basis for overturning the

5

Board's determination.  Having found Spinale's testimony not credible, the Board reasonably accepted the General Counsel's evidence that the Company would not have disassembled the machine until at least January 31, 1996, evidence that was supported by the Company's own financial statements.  The Company's remaining arguments on this score are premised on a misreading of our prior opinion and must be rejected for that reason alone.

The Company next challenges the Board's determination that all the discriminatees were qualified to perform other produce-packaging work, again largely by relying on Spinale's discredited testimony.  This challenge must also fail.  Substantial evidence supports the Board's findings that the Company "employs a group of completely unskilled workers to do unskilled work," and that none of the relevant operations "require any skill or training and [are, in fact,]. . . completely interchangeable."  Supplemental Order, 2010 WL 4929681, at *11.  The Board also reasonably credited the discriminatees' testimony that they performed some or all of the packaging functions required to pack potatoes, tomatoes, and Brussels sprouts by hand, and that they were not required to undergo any training that lasted for more than one day.  Accordingly, the Board reasonably determined that all of the discriminatees were qualified to perform other produce-packaging work after the potato-packaging machine was disassembled.

The Company then argues that it has met its burden of establishing that the discriminatees failed to mitigate their losses.  "[I]t is well settled that the General Counsel for the NLRB must establish the gross amount of back pay due, before the burden shifts to the employer to establish facts which would negative the existence of liability . . . or which would mitigate that liability."  *Ferguson Elec. Co.*, 242 F.3d at 431 (quoting *NLRB v. Browne*, 890 F.2d 605, 608 (2d Cir. 1989) (alteration and ellipsis in original)).  An employer may carry this burden by establishing that a discriminatee "fail[ed] to remain in the labor market, refuse[d] to accept

6

substantially equivalent employment, fail[ed] diligently to search for alternative work, or voluntarily quit[] alternative employment without good reason." *Mastro Plastics*, 354 F.2d at 174 n.3. The employer does not meet its burden where the wrongfully discharged employee has made "honest good faith efforts" and used "reasonable diligence" to find comparable work. *NLRB v. Thalbo Corp.*, 171 F.3d 102, 112 (2d Cir. 1999). In evaluating the employee's efforts, the Board does not undertake a "mechanical examination of the number or kind of applications," but rather examines "the sincerity and reasonableness of the efforts made by an individual in his circumstances to relieve his unemployment." *Mastro Plastics Corp.*, 136 NLRB 1342, 1359 (1962), *enforced in relevant part*, 354 F.2d 170 (2d Cir. 1965). "A backpay claimant's duty to mitigate her damages by using reasonable diligence in finding other suitable employment is not onerous, and does not require her to be successful in mitigation." *Thalbo Corp.*, 171 F.3d at 112 (internal quotation marks, brackets, and ellipsis omitted). Any doubts related to such proof are to be resolved against the employer. *Ferguson Elec. Co.*, 242 F.3d at 432.

In an effort to satisfy this heavy burden, the Company sets forth a number of arguments. First, it contends that the Region's staff failed to follow the correct procedures regarding contact with claimants. For example, it asserts that Esther Morales, the Region's representative, failed to maintain contact with the discriminatees during the course of their unfair labor practice proceedings as required by the NLRB Case Handling Manual. As a result, the Company contends, "there were no records to substantiate the claimants' alleged searches for employment, to the detriment of the employer." Pet'r's Br. 35. Second, the Company maintains that "[i]t is simply not plausible that all the claimants were able to house, feed and clothe themselves and their families for extended lengths of time on the generosity of their relatives," and it is "inconceivable that not even one of the 19 individuals could find any employment for up to a

7

year and a half when the unemployment rate was so low during that period of time, and when they all testified that they went to look for unskilled work 2 to 3 times a week, at around the minimum wage." *Id.* at 35-36. Third, the Company notes that one former employee, Mercedes Garcia, testified that she was pregnant during the backpay period, and that her backpay period should therefore be tolled. Fourth, the Company argues that Maria Garcia should not be awarded eight years of backpay simply because Spinale mistakenly misaddressed the envelope containing her offer of reinstatement. Finally, the Company highlights purported flaws and inconsistencies in each of the discriminatees' testimony, arguing that the ALJ erred by accepting this testimony as credible.

All of these arguments are without merit. First, whether the Regional staff fully followed the Board's Casehandling Manual is irrelevant as the staff's conduct has no bearing on the discriminatees' right to backpay. *See Houston Bldg. Servs., Inc.*, 321 NLRB 123, 130 (1996), *enforced*, 128 F.3d 860 (5th Cir. 1997). Moreover, the Board's Casehandling Manual is provided to serve merely as guidance to the Board's personnel:

> The Manual is not a form of binding authority, and the procedures and policies set forth in the Manual do not constitute rulings or directives of the General Counsel or the Board. **Accordingly, the provisions of the Manual should not be used against the National Labor Relations Board in any proceeding before the Board or in Federal court.**

NLRB Casehandling Manual (Part Three) Compliance Section, Introduction-Purpose of the Manual (emphasis in original). *See also NLRB v. Black Bull Carting Inc.*, 29 F.3d 44, 46 (2d Cir. 1994) (finding employer's reliance on a parallel provision of the Casehandling Manual governing Representation Proceedings to be misplaced); *Sitka Sound Sea Foods, Inc. v. NLRB*, 206 F.3d 1175, 1182 (D.C. Cir. 2000) ("[T]he Casehandling Manual does not bind the Board; it is intended to provide guidance to the Board's staff."). Relatedly, a discriminatee is "not

disqualified from receiving backpay solely because of poor recordkeeping." *Rainbow Coaches*, 280 NLRB 166, 179 (1986), *enforced mem.*, 835 F.2d 1436 (9th Cir. 1987); *see also Allegheny Graphics, Inc.*, 320 NLRB 1141, 1145 (1996) (same), *enforced sub nom. Package Serv. Co. v. NLRB*, 113 F.3d 845 (8th Cir. 1997). Indeed, "[t]he Board does not [even] require a discriminatee to document [her] search for work." *Midwest Motel Mgmt. Corp.*, 278 NLRB 421, 422 (1986).

Second, the Company's unfounded, speculative assertions with respect to the discrimintees as a group are wholly insufficient to meet the Company's burden of "establish[ing] facts which would negative the existence of liability . . . or which would mitigate that liability." *Ferguson Elec. Co.*, 242 F.3d at 431 (2d Cir. 2001) (internal quotation marks omitted, ellipsis in original). The Company is required to present specific proof that each discriminatee failed to mitigate her damages. *See NLRB v. Madison Courier, Inc.*, 472 F.2d 1307, 1318 (D.C. Cir. 1972) ("[T]he willful idleness issue must 'be determined with respect to *each employee* considering the record as a whole.'") (quoting *NLRB v. Rice Lake Creamery Co.*, 365 F.2d 888, 894 (D.C. Cir. 1966)). "This individualized, rather than group, approach is dictated by the nature of the mitigation rule which is generally recognized today." *Id.* Accordingly, generalized employment data, which fails to account for crucial factors such as skill level and geographic limitations, is insufficient to sustain the Company's burden.

Third, the Company's argument with respect to Mercedes Garcia is premised on a 1955 decision of the Board, which in turn relied upon an outdated presumption that a claimant's backpay was tolled for the three months before and three months after giving birth. This presumption has been removed from the Casehandling Manual, which now provides that the period of unavailability that exists due to pregnancy must be established in each individual case.

9

NLRB Casehandling Manual (Part Three) Compliance Proceedings § 10560.4. Here, although Mercedes Garcia testified that her job search diminished as her pregnancy progressed, she did not testify, as the Company maintains, that she never looked for work. Similarly, having reviewed the testimony of the remaining discriminatees, we conclude that the purported "flaws" and "inconsistencies" identified by the Company are either adequately explained by a complete reading of the record or far too minor to sustain the Company's burden of proof.

The Company's argument with respect to Maria Garcia fails as well. Unlike the other discriminatees, Garcia never actually received the Company's October 1, 1996 offer of reinstatement because it was mistakenly sent to the wrong person at the wrong address. *See G & T Terminal Packaging Co.*, 2010 WL 4929681, at \*1. The Board therefore determined that Garcia's backpay resumed on October 1, 1996 and ran until the second quarter of 2003, when Garcia turned 65 and stopped looking for work. *Id.* at \*13. Although there is no evidence in the record to suggest that this error was the result of bad faith, nor did the Company make any efforts to ascertain Maria Garcia's whereabouts or to double check that the offer was sent to the right person. *Id.* at \*12. While in some cases the backpay period may be tolled where a respondent has made a good-faith attempt to communicate a valid reinstatement offer to a discriminatee at his last known address, *Performance Friction Corp.*, 335 N.L.R.B. 1117, 1118 (N.L.R.B. 2001), here the Company failed to mail its offer to Maria Garcia's last known address despite having her correct address on file. Accordingly, we affirm the Board's award of backpay with respect to Maria Garcia.

Having addressed the Company's specific arguments with respect to the Board's backpay determinations, we finally consider the Company's global argument that the Board's remedy is not equitable because it requires the Company to pay over $500,000 to the discriminatees. This

argument is unavailing. Although the sum is substantial, it is the inevitable consequence of the Company's illegal conduct, and the Company therefore cannot be heard to complain that the sum is too great.

Lastly, we consider the Company's challenge to the Board's determination of the amount of reimbursement owed to certain discriminatees for out-of-pocket dental and optical expenses. Because the discriminatees' modest claims for reimbursement are supported by substantial, uncontradicted evidence, we conclude that the Board acted well within its broad remedial discretion by ordering the Company to pay these amounts.

We have considered the Company's remaining arguments and find them to be without merit. For the reasons stated herein, the petition for review is **DENIED** and the cross-petition for enforcement is **GRANTED**.

FOR THE COURT:

CATHERINE O'HAGAN WOLFE, CLERK