*12-3485-AG*
*NLRB v. Atlantic Veal & Lamb, Inc.*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 10th day of December, two thousand thirteen.

Present:
> ROSEMARY S. POOLER
> JON O. NEWMAN
> DEBRA ANN LIVINGSTON,
>
> *Circuit Judges.*

_____

NATIONAL LABOR RELATIONS BOARD,

*Petitioner*,

v.                                                                          12-3485-ag

ATLANTIC VEAL & LAMB, INC.,

*Respondent*.

_____

For Petitioner:                                    DAVID SEID (Lafe E. Solomon, Celeste J. Mattina, John H. Ferguson, Linda Dreeben, and Ruth E. Burdick, *on the brief*), Washington, D.C.

For Respondent:                                    STEVEN B. CHESLER, Fripp Island, South Carolina.

Petition to enforce two supplemental orders of the National Labor Relations Board (Chairman Liebman, and Members Schaumber and Pearce; Chairman Pearce and Member Griffin, with Member Hayes dissenting in part).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the petition for enforcement of the first Supplemental Decision and Order, dated May 28, 2010, is **GRANTED**. **IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the petition for enforcement of the Second Supplemental Decision and Order, dated June 27, 2012, is **GRANTED IN PART** and **DENIED IN PART**.

The National Labor Relations Board (the "NLRB" or "Board") petitions for enforcement of two of its orders directing Atlantic Veal & Lamb, Inc. ("Atlantic Veal") to compensate the discriminatee, Jeorge Ogando ("Ogando"), for lost wages. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues presented for review, which we reference only as necessary to explain our decision.

Under Section 10(c) of the National Labor Relations Act (the "Act"), the Board is empowered "to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies" of the Act. 29 U.S.C. § 160(c). "[A]n award of reinstatement with backpay is the normal remedy awarded to victims of discrimination," *G & T Terminal Packaging Co. v. NLRB*, 459 F. App'x 19, 21 (2d Cir. 2012) (citing *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 194 (1941)), and a finding that an employer discriminated against an employee within the meaning of the Act "'is presumptive proof that some back pay is owed,'" *id.* (quoting *NLRB v. Mastro Plastics Corp.*, 354 F.2d 170, 178 (2d Cir. 1965)). However, the backpay due a discriminatee is only "the amount that will restore the situation as nearly as possible, to that which would have obtained but for the illegal discrimination." *NLRB v. Ferguson Elec. Co.*, 242 F.3d 426, 431 (2d Cir. 2001) (internal quotation marks omitted). Therefore, the amount owed is generally "the difference between what [the discriminatee] would have earned but for the wrongful discharge and his actual interim earnings from the time of discharge until he is offered reinstatement." *Heinrich Motors, Inc. v. NLRB*, 403 F.2d 145, 148 (2d Cir. 1968).

Once the Board's General Counsel has established the gross amount of backpay due, the burden shifts to the employer to prove that the discriminatee is

ineligible for backpay or is owed a lesser amount. *See Mastro Plastics Corp.*, 354 F.2d at 175-79. Backpay "is not available to an employee who has suffered a willful loss of earnings," *Ferguson Elec. Co.*, 242 F.3d at 434, or concealed interim earnings from the Board, *Am. Navigation Co.*, 268 NLRB 426, 427 (1983). After the Board calculates an award, our review of it is limited, *see, e.g.*, *TNT USA Inc. v. NLRB*, 208 F.3d 362, 366-67 (2d Cir. 2000), such that we "must enforce the Board's order where its legal conclusions are reasonably based, and its factual findings are supported by substantial evidence on the record as a whole," *NLRB v. Katz's Delicatessen of Houston St., Inc.*, 80 F.3d 755, 763 (2d Cir. 1996). However, "[s]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951) (internal quotation marks omitted). Thus, reversal on a factual question is proper where "after looking at the record as a whole, we are left with the impression that no rational trier of fact could reach the conclusion drawn by the Board." *Katz's Delicatessen*, 80 F.3d at 763 (internal quotation marks omitted).

Atlantic Veal declined to challenge the Board's first Supplemental Decision and Order, dated May 28, 2010. Because the "party challenging the Board's remedial choice has the burden of proving that the Board abused its discretion in making [its]

determination," *G & T Terminal Packaging Co.*, 459 F. App'x at 22, the petition for enforcement of that order is granted. By contrast, Atlantic Veal contests the Board's Second Supplemental Decision and Order, dated June 27, 2012, on two separate grounds. First, Atlantic Veal argues that the record does not support the Board's finding that Ogando "diligently" sought employment in the last quarter of 2001. Second, Atlantic Veal asserts that it established that Ogando concealed interim earnings from the Board for the period from January 1, 2002 through June 7, 2004. Only Atlantic Veal's second argument has merit.

The Board will toll a discriminatee's backpay for failure to mitigate. *Grosvenor Orlando Assocs., Ltd.*, 350 NLRB 1197, 1198-99 (2007). However, "the ultimate burden of proving a wil[l]ful loss is on the employer," *Heinrich Motors, Inc.*, 403 F.2d at 148, and cannot be met merely by way of the discriminatee's lack of documentation or success, *NLRB v. Thalbo Corp.*, 171 F.3d 102, 112 (2d Cir. 1999); *Midwest Motel Mgmt.*, 278 NLRB 421, 422 (1986). Atlantic Veal asserts that Ogando cannot receive backpay for the last quarter of 2001 because the record does not support a finding that he mitigated his losses. In support of its claim, Atlantic Veal emphasizes that Ogando cannot recall specific job applications that he filed in 2001, did not search newspaper advertisements until 2002, and failed to utilize New York State's job search

5

assistance program despite collecting unemployment insurance at the time. However, Ogando testified that he began to look for work in "mid-November," and Atlantic Veal failed to provide any evidence to establish its affirmative defense. Because "the backpay claimant should receive the benefit of any doubt rather than the [r]espondent, the wrongdoer," *United Aircraft Corp.*, 204 NLRB 1068, 1068 (1973), we conclude that the Board acted within its broad remedial discretion by ordering Atlantic Veal to pay $4,001.04.[1]  Accordingly, the petition for enforcement of the Second Supplemental Decision and Order is granted insofar as it concerns the last quarter of 2001.

Concerning Atlantic Veal's second argument, "discriminatees found to have willfully concealed from the Board their interim employment will be denied backpay for all quarters in which they engaged in the employment so concealed." *Am. Navigation Co.*, 268 NLRB at 427.  "It is the [r]espondent's burden to prove willful concealment." *Cibao Meat Prods.*, 348 NLRB 47, 48 (2006).  At the evidentiary hearing, Ogando testified that he worked sporadically in light construction from

[1] Though the Second Supplemental Decision and Order suggests that Ogando is due $666.84 per week in overtime, as well as an "additional" $4,001.04, the Board clarified at oral argument that it awarded Ogando *only* $4,001.04 for wages and overtime for this six-week period.

2002 through June 7, 2004, when he was hired by a grocer. Ogando also submitted tax returns supporting his account. However, Atlantic Veal submitted multiple documents undercutting Ogando's claim. These documents demonstrated, *inter alia*, that Ogando had reported two jobs in the relevant period on his job application for the grocer, that he received a check for $500 from one of these purported employers in 2003, that Ogando reported an annual income of $66,123.00 on a mortgage application in 2003, and that the W-2 submitted in support of the application corroborated that claim. Ogando also purchased a home during this period. While Ogando provided explanations for each of these discrepancies, and was aided by occasionally supportive testimony from a friend, the Administrative Law Judge ("ALJ") – initially and on remand – deemed Ogando's account incredible. In light of the evidence, the ALJ denied Ogando backpay for the period. The Board reversed. The Board concluded that it was "unnecessary to pass on the [ALJ's] credibility determinations," because the ALJ had not made "affirmative findings of fact" regarding Ogando's work history; instead, the Board was left to "interpret conflicting documentary evidence" – namely, Ogando's tax returns and the mortgage application, job application, W-2 form, pay stubs, and check. Because uncertainties should be resolved in favor of the "backpay claimant rather than the

7

respondent wrongdoer," *United Aircraft Corp.*, 204 NLRB at 1069, the Board determined that Atlantic Veal had failed to establish its defense.

We conclude that the Board's findings were not supported by substantial evidence: Ogando was far from a credible witness, as determined by the ALJ, and Atlantic Veal introduced significant evidence debunking Ogando's claims. Moreover, the ALJ necessarily determined that Ogando's self-prepared tax returns – along with his testimony – were incredible, negating any conflict in the documentary evidence and leaving no doubt to resolve in Ogando's favor. Because Atlantic Veal established by a preponderance of the evidence that Ogando concealed earnings from the Board, and because Ogando failed to present any credible contradictory evidence, "no rational trier of fact could reach the conclusion" that Ogando fully disclosed his earnings. *See Katz's Delicatessen*, 80 F.3d at 763. Accordingly, the petition for enforcement of the Second Supplemental Decision and Order is denied insofar as it concerns the period from January 1, 2002 through June 7, 2004.

We have considered all of Atlantic Veal's remaining arguments and find them to be without merit. Accordingly, we **GRANT** the petition for enforcement of the first Supplemental Decision and Order, dated May 28, 2010; **GRANT** the petition for

enforcement of the Second Supplemental Decision and Order, dated June 27, 2012, insofar as it concerns the last quarter of 2001; and **DENY** the petition for enforcement of the Second Supplemental Decision and Order insofar as it concerns the period from January 1, 2002 through June 7, 2004.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk